HORIZON CONCEPTS, INC., A Texas Corporation, Plaintiff-Appellant,

v.

CITY OF BALCH SPRINGS, et al., Defendants-Appellees.

No. 85–1411.

United States Court of Appeals, Fifth Circuit.

May 16, 1986.

———

Daniel P. Donovan, Peter J. Harry, Dallas, Tex., for plaintiff-appellant.

Lawrence W. Jackson, Dallas, Tex., for defendants-appellees.

Before WISDOM, REAVLEY and JOHNSON, Circuit Judges.

WISDOM, Circuit Judge:

The question is whether a zoning ordinance regulating modular home construction violates the Fourteenth Amendment. We hold that the ordinance is constitutional on its face and as applied to the plaintiff.

### I.

Horizon Concepts, Inc. builds modular houses. Horizon produces large components or "modules" of its houses at a factory and assembles them at the site on a permanent foundation. Like houses built using conventional methods, modular houses vary in size, design, and quality.

Horizon purchased 19 lots in the Spring Oaks subdivision of Balch Springs in 1982. In September 1982 Horizon applied to the City for permits to build modular houses on three of the lots. On October 4, while the applications were pending, the City Council held a special meeting and voted to delay issuing permits for modular houses for one month. At the meeting council members expressed concern that modular houses could be constructed faster than municipal services could be provided for them, and that the definition of modular house under Texas law is broad enough to cover low-quality buildings resembling mobile homes.[1] The City later issued the three permits and Horizon built three modular houses in the Spring Oaks subdivision.

On October 21, the Planning and Zoning Commission met and recommended that the City permanently regulate modular home construction. After a public hearing on October 25, the City Council adopted Ordinance 363, which classifies both modular houses and mobile homes as "special uses" and requires builders to obtain a special use zoning ordinance for each modular house constructed in Balch Springs. The district court found that "all notices required by law were given in regard to each of these meetings and hearings".

Horizon applied for ten special use permits in February 1983. On March 3, the Planning and Zoning Commission held a hearing to consider Horizon's request. Commission members were dissatisfied with the Horizon representative's presentation and recessed the hearing until April 7. When no Horizon representative appeared

---

1. Until 1986 modular houses were governed by the Texas Manufactured Housing Standards Act, Tex.Rev.Civ.Stat.Ann. art. 5221f (Vernon Supp. 1986). Section 3(q) of that Act defines "modular home" as:

 [a] dwelling that is constructed in one or more modules at a location other than the homesite, or is constructed utilizing one or more modular components, and which is designed to be used as a permanent residence when the modular components or modules are transported to the homesite and are joined together, or are erected, and installed on a permanent foundation system. The term includes the plumbing, heating, air-conditioning, and electrical systems. It is expressly provided, however that the term modular home shall not mean nor apply to: (i) housing constructed of sectional or panelized systems not utilizing modular components; (ii) any ready-built home which is constructed so that the entire living area is contained in a single unit or section at a temporary location for the purpose of selling it and moving it to another location; and (iii) any dwelling constructed in modules incorporating concrete as the basic and predominant structural component.

 Section 3(q) was repealed as of January 1, 1986.
 Members of the Council expressed concern that the Act might preempt the field of modular housing regulation. The Texas legislature later added a clarifying amendment:

 Nothing in this Act shall be construed to limit or diminish, nor increase nor add to, the authority of cities, towns or villages, including home-rule cities, to limit or otherwise regulate manufactured homes....

 Tex.Rev.Civ.Stat.Ann. art. 5221f § 20 (Vernon Supp.1986).

before the Commission at the April 7 hearing, the Commission recommended that the City Council deny the permits.

Horizon representatives did appear before the City Council on May 9 and offered to answer questions. The Council nevertheless voted 3–2 to deny the permits. Council members testified that they voted to deny the application because Horizon failed to appear before the Planning and Zoning Commission and failed to make a convincing presentation to the Council.

## II.

■ Because local zoning is a "quasi-legislative" process and therefore governed only by limitations on legislative procedure, we review zoning ordinances only to determine whether they are arbitrary and capricious. *Couf v. DeBlaker*, 5 Cir.1981, 652 F.2d 585, 588, *cert. denied,* 1982, 455 U.S. 921, 102 S.Ct. 1278, 71 L.Ed.2d 462; *South Gwinnett Venture v. Pruitt*, 5 Cir.1974, 491 F.2d 5, 7 (en banc), *cert. denied,* 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64. This Court has embraced the doctrine to the point of holding that an appointed zoning board of adjustment's denial of a variance from a zoning ordinance is entitled to the deference due a state statute. *Shelton v. City of College Station*, 5 Cir.1986, 780 F.2d 475 (en banc). The rational basis test guides our analysis under both the Due Process and the Equal Protection Clauses. *Thompson v. Gallagher*, 5 Cir.1973, 489 F.2d 443, 447.

"[M]ere negative attitudes, or fear, unsubstantiated by factors which are properly cognizable in a zoning proceeding" are not an adequate basis for a zoning ordinance. *City of Cleburne v. Cleburne Living Center*, 1985, —— U.S. ——, ——, 105 S.Ct. 3249, 3259, 87 L.Ed.2d 313, 326. In searching for more substantial factors, however, the court typically does not "sift through the record to determine whether policy decisions are squarely supported by a firm factual foundation". 105 S.Ct. at 3264, 85 L.Ed.2d at 332 (Marshall, J., concurring in part), *citing Minnesota v. Clover Leaf Creamery Co.*, 1981, 449 U.S. 456, 462, 464, 101 S.Ct. 715, 723, 66 L.Ed.2d 659. In this case such sifting is doubly unnecessary because the City Council laid a firm factual foundation in Ordinance 363 itself.

■ The Council found that "the term modular home is so broadly defined that ... it can include structures ranging from elaborate residential dwellings to structures made up of slightly altered 'mobile home' sections". Horizon does not contest this finding. Nor does Horizon contest the City's power to regulate structures assembled from slightly altered mobile home sections.[2] Horizon argues that existing regulations were adequate to prevent the construction of structures resembling mobile homes.[3] The Council did not think so. Existing regulations were not adequate to prevent Horizon from using one of the three permits it obtained to build a house resembling a "double-wide mobile home" with a "lean-to" garage. Horizon asserts that it should not be prevented from erecting structures resembling mobile homes when conventional builders are permitted to do so. There is no evidence in the record that conventional builders have demonstrated a tendency to build such houses in Balch Springs. Even if they have, such imprecision has long been permitted in regulations subject to minimal scrutiny under the Equal Protection Clause. *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511. We hold that Ordinance 363 is a rational measure to protect property values.

---

**2.** The Supreme Court of Texas has held that municipalities need not treat mobile homes as they treat other houses. *City of Brookside Village v. Comeau*, Tex.1982, 633 S.W.2d 790, *cert. denied,* 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932.

**3.** All new houses in the City of Balch Springs must conform to the City's comprehensive zoning ordinance. That ordinance establishes a minimum lot area, minimum front, back, and side yard areas, and a minimum "living space". The ordinance also requires that a minimum percentage of the facade be covered with brick or other masonry, and that the house include a garage and driveway.

Ordinance 363 also recites that "Modular Home development can 'build out' an area within the City in a fraction of the time required for on-site construction and that this places upon the Governing Body of the City a greater burden than that imposed by on-site construction in insuring proper facilities". Horizon asserts that modular houses cannot be built any faster than houses built by conventional methods. "[T]hose challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Vance v. Bradley,* 1979, 440 U.S. 93, 111, 99 S.Ct. 939, 949, 59 L.Ed.2d 171. Horizon has made no such showing. Indeed it admits that a single modular house can be built faster than a single conventional house. We are bound to accept the Council's finding of fact.

Horizon further argues that the Texas Platting Act is adequate protection against "build-out". That statute prevents a builder from selling houses in a subdivision until roads, drains, sewers, fire plugs, and curbs are in place. Tex.Rev.Civ.Stat.Ann. art. 974a (Vernon Supp.1986). The Platting Act does not govern all municipal services, however. Rapid construction of modular houses might outstrip the City's capacity to supply water, for example. The City might then have to construct water tanks, master sewer mains, lift stations, or pump stations on an emergency basis at taxpayers' expense. We hold that Ordinance 363 is a rational means to prevent "build-out".

■ Horizon also argues that Ordinance 363 is void for vagueness because it does not specify the information required by the Planning and Zoning Commission. On the contrary, Ordinance 363 amends the City's comprehensive zoning ordinance, which sets out the information required

with specificity.[4] Horizon also contends that the ordinance contains no standards on which the Council can base decisions to grant or deny permits. We hold that preservation of property values and prevention of build-out are standards sufficient to channel the Council's discretion.

### III.

Horizon further argues that ordinance 363 is unconstitutional as applied to its request for special use permits. As pointed out earlier, we recently held that the denial of a zoning variance by a Board of Adjustment is a quasi-legislative act subject only to the rational basis test. *Shelton v. City of College Station,* 780 F.2d 475. We need not go as far as that holding, however, to dispose of Horizon's arguments.

■ Horizon's representatives knew that the Planning and Zoning Commission would consider their application at the April 7 hearing, and that the Commission's recommendation would carry great weight with the City Council.[5] Horizon's representatives nevertheless failed to attend the hearing. We hold that Horizon's failure to appear justifies the City's refusal to award the building permits. In *Burgess v. City of Houston,* we held that a plaintiff had no constitutionally-protected right to receive electric power while refusing to comply with reasonable procedures. 5 Cir.1983, 718 F.2d 151. The same principle governs this case.

■ Finally, we reject Horizon's argument that it was deprived of procedural due process. Horizon had two opportunities to be heard before the Planning and Zoning Commission and a third opportunity to be heard before the Council. That Horizon's representatives chose not to attend

---

**4.** The ordinance requires the applicant to describe the property, the zoning change requested, the reasons for the request, the deed restrictions on the property, and whether the applicant is the owner, a prospective owner, or a tenant. § 12–32–3. The applicant must also submit a site plan showing the proposed development,

building lines, parking areas, and means of ingress and egress. *Id.*

**5.** The Council may not act on a request for a special use permit without a recommendation from the Commission. Tex.Rev.Civ.Stat.Ann. art. 1011f(b) (Vernon Supp.1986).

the second Commission hearing, and chose not to present their case in full before the Council, does not affect the constitutional adequacy of the hearings.

The judgment of the district court is AFFIRMED.