**TEXAS MANUFACTURES HOUSING ASSOCIATION, INC., Plaintiff,**

v.

**CITY OF LA PORTE, et al., Defendants.**

Civ.A. No. H–94–1066.

United States District Court,
S.D. Texas,
Houston Division.

Aug. 8, 1996.

Douglas Brent Wells, Wells & Henry, Houston, TX, for plaintiff.

John Joseph Hightower, Olson & Olson, Houston, TX, for defendant.

### MEMORANDUM AND ORDER ON MO- TION FOR RECONSIDERATION

ATLAS, District Judge.

Plaintiff Texas Manufactured Housing Association, Inc. ("Plaintiff") has filed a **Motion for Reconsideration** [Doc. # 51] ("Plaintiff's Motion") of this Court's Memorandum Opinion granting summary judgment in favor of

Defendants on all of Plaintiff's claims and denying summary judgment in favor of Plaintiff.[1] Plaintiff's Motion argues strenuously that this Court erred in granting summary judgment in favor of Defendants ("City" or "La Porte") on Plaintiff's claims under the Commerce Clause and on Plaintiff's argument that Ordinance 1501 of the City of La Porte is pre-empted by federal law. *See* City of La Porte Zoning Ordinance 1501 (Exhibit A–1 to Defendants' Motion for Summary Judgment [Doc. # 13]) ("Ordinance"). Plaintiff also argues that there is a fact question as to the application of rational basis review under the Due Process and Equal Protection Clauses. Since the City also has addressed this matter, the Court will reconsider its ruling in that regard as well.

For the reasons stated herein, it is now ordered that the Motion for Reconsideration is granted. It is, however, further ordered that Plaintiff's request that this Court vacate its previous Memorandum Opinion is denied. This Order supplements and clarifies the Court's prior Memorandum Opinion.

### *Federal Pre-emption*

Plaintiff argues that summary judgment in favor of Defendants on its claim of federal pre-emption was error.[2] Specifically, Plaintiff argues that the City's motivation for excluding HUD-code manufactured homes from "R–1" districts in La Porte is "based on the City's preference for structures which are built to its local building code, including modular homes." Plaintiff's Motion, at 19.[3]

The evidence cited by Plaintiff as supporting its argument concerning the City's actual motivation is as follows: first the City allows modular homes to be placed on individual lots in "R–1" districts; second, modular homes

are constructed to La Porte's building code; and third, the City's responses to Plaintiff's requests for admissions and interrogatories demonstrate that the City does not consider HUD-code manufactured homes to be as safe as modular or conventional site-built homes and specifically stated that "[m]odular/industrialized homes are constructed to meet more stringent safety requirements than are HUD-code homes." Plaintiff's Motion, at 20–21.[4] Plaintiff asserts that this evidence "demonstrate[s] unequivocally" that the City believes that HUD-code homes, because of the building code to which they are built, are not as safe as either modular or conventional site-built homes, and therefore that "it can reasonably be concluded that HUD-code homes are being excluded from R–1 districts because of safety concerns and a preference for the local building code." *Id* at 21.

▮▮ As noted in this Court's previous Memorandum Opinion, the National Manufactured Housing Construction and Safety Standards Act, 42 U.S.C. § 5401 *et seq.,* states that

> no State or political subdivision of a State shall have any authority either to *establish, or continue in effect,* with respect to any manufactured home covered, *any standard regarding construction or safety* applicable to the same aspect of performance of such manufactured home which is not identical to the Federal manufactured home construction and safety standard.

42 U.S.C. § 5403(d) (emphasis added). Even assuming *arguendo* that, as Plaintiff urges, the City's exclusion of HUD-code homes from La Porte's "R–1" districts is based upon a belief that HUD-code homes are not as safe as other types of homes because of the building code to which they are constructed, and even if the City's belief is erro-

---

1. Specifically, Plaintiff requests that this Court vacate, alter or amend its Memorandum Opinion [Doc. # 49], as well as its Order granting Defendants' summary judgment motion [Doc. # 47], its Order denying Plaintiff's summary judgment motion [Doc. # 48], and its Final Judgment [Doc. # 50].

2. Plaintiff also moved for summary judgment on this claim, *see* Doc. # 46, and therefore takes the position that there are no genuine issues of material fact.

3. Neither this Order nor the pleadings in this lawsuit address the question of whether the conditions imposed on manufactured homes in La Porte's "R–2" and "R–3" districts are pre-empted.

4. *See* City of La Porte's Responses to Plaintiffs' First Set of Interrogatories, Requests for Admissions, and Requests for Production (Exhibit M to Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment [Doc. # 17] ("Original Response")), at 16–17.

neous, such evidence simply does not demonstrate that the City, by the exclusion, has "establish[ed] or continue[d] in effect" a construction or safety standard that applies to manufactured homes.[5] Indeed, rather than establish construction or safety standards for manufactured homes, La Porte has excluded manufactured homes from its "R–1" districts.[6]

Plaintiff relies heavily on an Eleventh Circuit decision holding that a town's ordinance, which required manufactured homes placed in certain zones to meet local or state building codes, was a safety requirement pre-empted by federal statute. *See Scurlock v. Lynn Haven*, 858 F.2d 1521 (11th Cir.1988). However, the Eleventh Circuit's opinion explicitly rejected Plaintiff's contention that regulation of location of manufactured homes is pre-empted, noting that the City of Lynn Haven "[u]ndoubtedly ... could limit Zone R–AA to conventionally-built residences and exclude mobile homes." *Id.* at 1525.

As the Court held in the previous Memorandum Opinion, La Porte's exclusion of manufactured housing from "R–1" districts, which is merely a restriction on *location* of manufactured housing, is not pre-empted by federal statute. Therefore, the Court's prior order granting summary judgment in favor of Defendants will not be vacated.

### *Rational Basis (Due Process and Equal Protection)*

A legislature "does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect." *Gregory v. Ashcroft*, 501 U.S. 452, 473, 111 S.Ct. 2395, 2407, 115 L.Ed.2d 410 (1991) (internal quotation marks and citations omitted); *see also Richard v. Hinson*, 70 F.3d 415, 417 (5th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 2522, 135 L.Ed.2d 1047 (1996). The Supreme Court has recently recognized that "most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Romer v. Evans*, —— U.S. ——, ——, 116 S.Ct. 1620, 1627, 134 L.Ed.2d 855 (1996) (citing *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 271–72, 99 S.Ct. 2282, 2292–92, 60 L.Ed.2d 870 (1979)). *Under* the Court's rational basis test, which is applied when a classification neither burdens a fundamental right nor targets a suspect class, "a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." *Id.* (citing cases). The Equal Protection Clause "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices," and those challenging the rationality of a legislative classification have the burden to negate "every conceivable basis" which might support it. *Federal Communications Comm'n v. Beach Communications, Inc.*, 508 U.S. 307, 313–16, 113 S.Ct. 2096, 2101–02, 124 L.Ed.2d 211 (1993). Moreover, the absence

---

**5.** *Cf. Georgia Manufactured Housing Ass'n, et al v. Spalding County, Ga. et al.*, No. 3:94–CV–51–GET, slip op. at 18 (N.D. Ga. June 13, 1996) (attached to Plaintiff's letter to the Court, dated June 27, 1996) (*"Georgia Manufactured Housing* decision") (holding that Spalding County ordinance's 4:12 roof pitch requirement for manufactured houses is pre-empted by federal law because it interferes with the federal statute's construction and safety requirements).

**6.** Furthermore, Plaintiff has provided no authority to support its argument that this Court must look to an *implicit* purpose of an ordinance, such as safety regulation, in order to ascertain whether or not the ordinance is pre-empted. The case law clearly establishes that federal pre-emption of state law may occur in three ways: (1) when Congress expressly pre-empts state law; (2) when Congress legislates so comprehensively that it implies a congressional intent to pre-empt

state regulation in the area; (3) when state law is displaced because of a conflict with federal law. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 363 (5th Cir.1995); *Morgan City v. South La. Elec. Coop. Assn.*, 31 F.3d 319, 322 (5th Cir.1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 275, 133 L.Ed.2d 196 (1995). Conflict pre-emption, which is the third type, may occur when either (1) a provision of state law is incompatible with a federal statute such that compliance with both is a "physical impossibility" or (2) the application of state law would disturb, interfere with, or seriously compromise the purposes of the federal statutory scheme. *Morgan City*, 31 F.3d at 322. This analysis looks to the purposes of *federal* legislation and the intent of the *federal* Congress, and does not support Plaintiff's argument that the intent of the state or local lawmakers should be considered by this Court in deciding the pre-emption question.

of legislative facts explaining a classification has no significance in the rational basis analysis, since the classification "may be based on rational speculation unsupported by evidence or empirical data." *Id.* at 314–16, 113 S.Ct. at 2102.[7]

■ Under the Due Process Clause, local zoning ordinances are unconstitutional only if they are "clearly arbitrary and unreasonable, having no substantial relation to the public safety, morals, or general welfare." *Village of Euclid, Ohio v. Ambler Realty Co.,* 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926). Zoning ordinances are entitled to the same deference as state statutes, and constitutional challenges are evaluated under the rational basis test. *Horizon Concepts, Inc. v. City of Balch Springs,* 789 F.2d 1165, 1167 (5th Cir.1986); *Shelton v. City of College Station,* 780 F.2d 475 (5th Cir.) (en banc), *cert. denied,* 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986).

■ Plaintiff's Motion, while requesting reconsideration of the Court's application of the rational basis test and referring generally to the existence of questions of fact, provides no argument on this point. The Court therefore refers to Plaintiff's original summary judgment response, in which Plaintiff argued that there is no rational basis for La Porte's differential treatment of manufactured housing.

Defendants have argued that the crucial difference,between manufactured homes and industrialized homes is that "manufactured homes are designed and constructed for permanent transportability and other forms of housing, including industrialized housing, are not," and therefore that manufactured housing may lead to a decrease in property values. Defendants' Response to Plaintiff's Motion for Reconsideration [Doc. # 55] ("Defendants' Response").[8] La Porte argues, as it did in its original summary judgment motion, *see* Defendants' Motion for Summary Judgment [Doc. # 13] ("Original Motion"), at 4–6, that it is rational for city officials to conclude that owners of manufactured homes, "who can literally pick up their houses and move them if their neighborhood declines," will have reduced economic interest in the viability of their neighborhood and city. Defendants' Response, at 5.[9] Indeed, although Janet Stevenson, formerly a plaintiff in this action, stated in her affidavit that "[i]f [she] had been allowed to replace [her] manufactured home, [she] intended to place it on a permanent foundation which would have been bolted or welded to piers buried deep in the ground," Stevenson Affidavit

---

7. *See also Gregory,* 501 U.S. at 473, 111 S.Ct. at 2407 (Missouri's mandatory retirement law for some state judges does not violate Equal Protection Clause, even though it is "far from true that all judges suffer significant deterioration in performance at age 70," it is "probably not true that most do," and it "may not be true at all"; the people of .Missouri "rationally could conclude that the threat of deterioration at age 70 is sufficiently great, and the alternatives for removal sufficiently inadequate, that they will require all judges to step aside at age 70"); *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 466, 101 S.Ct. 715, 725, 66 L.Ed.2d 659 (1981) (whether *in fact* the statute achieved its purpose is not the question; Equal Protection Clause is satisfied by conclusion that legislature *could rationally have decided* 'that the statute might promote its purpose).

8. Under federal law, a manufactured home is defined as one that has a permanent chassis and is designed to be used with or without a permanent foundation. *See* 42 U.S.C. § 5402(6). By contrast, Texas law defines industrialized housing to mean a residential structure that is "designed to be used as permanent residential structure" and is composed of modules or modular components that are "erected or installed on a permanent foundation system." Tex.Rev.Civ. Stat. Ann. art. 5221f-1, § 1(1) (Vernon 1987).

9. In its Response to the instant motion, the City has proffered an additional document referred to as "HUD Docket No. 92–1610 Manufactured Housing Institute's Petition for Rulemaking." *See* Exhibit 1 to Defendants' Response to Plaintiff's Motion for Reconsideration [Doc. # 55] ("Defendants' Response"). Plaintiff objects to this evidence on the grounds that it is hearsay and that it improperly supplements the summary judgment record. Plaintiff's Reply to Defendants' Response to Plaintiff's Motion for Reconsideration [Doc. # 58] ("Plaintiff's Reply"), at 1–3. Plaintiff further argues that this document, if it is considered, raises genuine issues of material fact because, according to Plaintiff, this case concerns "permanently installed, permanently sited HUD-code homes on permanent foundation systems." *Id.* at 2–3 (emphasis omitted). The Court declines to consider this document; it was submitted too late and, in any event, its relevance to the Motion is not evident.

(Exhibit B to Original Response), at 3, her affidavit also supported Defendant's position. Stevenson stated that one of the reasons she had chosen to live in a manufactured home was that "[i]f [she] needed to move away from the area, *[she] could take [her] home with [her]* without losing [her] investment in it" and that "[i]f in the future [she] needed a larger home or a home with more bathrooms or other features, *[she] could sell [her] manufactured home and replace it with another." Id.* (emphasis added).

Several affidavits proffered by Plaintiff assert that manufactured homes, once sited, are rarely moved.[10] These statements are not accompanied by any statistics or other data, and use vague or subjective terms of measurement. Moreover, La Porte's officials disagree. Charles Harrington, Director of Planning for the City of La Porte, stated that, "[B]ecause mobile homes are more easily transportable than other forms of residential housing, owners of mobile homes may not feel the same sense of commitment to the community and may be less likely to invest in upgrading their property through landscaping and the construction of other improvements." Affidavit of Charles Harrington (Exhibit A to Original Motion), at 2–3; *accord* Preliminary Report of Vernon G. Henry, A.L.C.P., C.R.E. [Doc. # 41], at 2 (since manufactured homes "are constructed on a permanent frame .... the perception (as well as the reality, in many cases) of the owner as well as neighbors is that they may well be later moved").

La Porte citizens also clearly have the perception that mobility is a factor. *See* Transcript of Public Hearing and Regular Meeting of the La Porte Zoning Board of Adjustment, March 23, 1994 (Exhibit L to Original Response), at 48–56. During the public hearing concerning Stevenson's application to place a manufactured home on her lot, four persons who own nearby homes stated that they wanted Ordinance 1501 to be upheld because they believe that mobile homes or "house trailers" devalue their property. This disagreement in itself demonstrates that the matter is "at least debatable." Thus, this Court concludes that Plaintiff has not satisfied its burden of negating every conceivable rational basis for the Ordinance's exclusion. *Federal Communications Comm'n,* 508 U.S. at 313–16, 113 S.Ct. at 2101–02.[11]

Furthermore, La Porte has proffered the appearance of manufactured homes as an additional rational basis for their exclusion from "R–1" districts. Plaintiff's response to this argument is carefully qualified:

*[M]any* HUD-code manufactured homes built today are multi-section homes. *Although there is a broad spectrum of styles available,* there are *many* multi-section homes built today which bear a striking resemblance to site-built homes..... In addition ..., planners across the country are now stressing the important role that permanent foundation systems, landscaping, siding, and roofing can play in foster-

---

**10.** *See* Affidavit of Will Ehrle, President and General Counsel of TMHA (Exhibit E to Original Response), at 3 ("[o]n the issue of mobility, the available statistical data reveals that a substantial number of all manufactured homes are not moved from their initial place of installation"); Affidavit of Welford Sanders (Exhibit F to Original Response), at 3 (manufactured homes, once sited, "are rarely moved, and the hitch, axles, and wheels are removed").

**11.** The Court further notes that statistics about mobility provided in one of Plaintiff's experts' reports further support La Porte's rational basis. *See* City of La Porte Housing Needs (dated February 28, 1995) (attached to Affidavit of Larry Keating (Exhibit Q to Original Response)) ("Keating Report"), at 11–12. Table 5 of the Keating Report, entitled "Year Moved into Unit by Housing Characteristics," measures mobility of persons who own three types of homes: (1)

single family, attached or detached, (2) manufactured home, and (3) multifamily housing. The data reports that the average length of residence for an owner-occupied single family home is 6.26 years, whereas the average for an owner-occupied manufactured home is only 4.09 years—in other words, tenure in La Porte's single family homes is, on average, 53.06% longer than tenure in the City's manufactured homes. The data in Table 5 also reflects that, out of 25,240 households in owner-occupied single family homes, 11,234 (44.51%) have been in the same housing unit since 1979 or before, whereas 14,006 (55.50%) have been in the unit since 1980 or after; by contrast, out of 1,676 households in owner-occupied manufactured homes, only 345 (22.98%) have been in the same unit since 1979 or before, and 1,291 (77.03%) have been in the unit since 1980 or after.

ing the compatibility of manufactured housing with surrounding conventional site-built homes.

Original Response, at 25–26.[12] "[N]ew manufactured homes built today are available in a *wide range* of sizes and prices, with *varying levels* of excellence and amenities .... [M]any HUD-code homes ... [are] compatible with, and even indistinguishable from, site-built homes." Ehrle Affidavit, at 5.

Given this "wide range" of manufactured homes, Plaintiff has not met its burden of establishing that the City has no rational basis for relying upon appearance in excluding manufactured homes from "R–1" districts. Summary judgment in favor of La Porte, therefore, is appropriate on this ground as well.

### Commerce Clause

Plaintiff also moves this Court for reconsideration of its holding granting summary judgment in favor of La Porte on Plaintiff's Commerce Clause claim.[13] This Court previously held that Ordinance 1501's exclusion of manufactured homes from "R–1" districts is an evenhanded regulation with only incidental effects on interstate commerce, and that the burden on interstate commerce resulting from the Ordinance was not clearly excessive in light of the putative local benefits. Memorandum Opinion, at 17–18.[14] The Memorandum Opinion addressed the only complaint raised by Plaintiff about the ordinance, which was the exclusion of manufactured housing from "R–1" districts; no claims concerning the validity of "R–2" or "R–3" districts are before this Court.[15] For the reasons stated herein, the Court remains convinced that there are no genuine issues of material fact as to Plaintiff's claim under the Commerce Clause, and that summary judgment is appropriate in favor of La Porte.

*Potentially Applicable Legal Tests.*— There are two possible routes of analysis under the Commerce Clause. If an ordinance regulates evenhandedly with only incidental effects on interstate commerce, then it is valid unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. *Oregon Waste Systems v. Department of Environmental Quality,* 511 U.S. 93, 99–100, 114 S.Ct. 1345, 1350, 128 L.Ed.2d 13 (1994); *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). This flexible approach, often referred to as "the *Pike* test" is available only " 'where other legislative objectives are credibly advanced *and* there is *no* patent discrimination against interstate trade.' " *Chemical Waste Management, Inc. v. Hunt,* 504 U.S. 334, 343 n. 5, 112 S.Ct. 2009, 2014 n. 5, 119 L.Ed.2d 121 (1992) *(emphasis original) (quoting Philadelphia v. New Jersey,* 437 U.S. 617, 624, 98 S.Ct. 2531, 2535–36, 57 L.Ed.2d 475 (1978)). *If, on the other hand, an ordinance discriminates against interstate commerce or its effects favor in-state economic interests at the expense of out-of-state interests, the statute is unconstitutional unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism. Fort*

---

12. Plaintiff's emphasis on the need for features such as landscaping and other improvements undercuts its economic argument ·about La Porte's ·irrational denial of low-cost affordable housing.

13. Plaintiff originally moved for summary judgment on the Commerce Clause issue, *see* Doc. # 46, and therefore took the position that there are no genuine issues of material fact pertaining to this claim. However, Plaintiff inconsistently submitted a list of issues it contends are fact questions on the Commerce Clause issue. *See* Genuine Issues of Material Fact (Exhibit A to Plaintiff's Motion), at 10. None of these purported issues raise genuine questions of material fact. Most are legal questions. The rest are either not

"material" or not established by the record to be genuine fact questions.

14. The district court in the Georgia action, ruling on Commerce Clause challenge to a similar zoning ordinance, reached the same conclusion. *Georgia Manufactured Housing* decision, *supra* note 5, op. at 605.

15. Plaintiff's pleadings complain only of the Ordinance's exclusion of manufactured housing from "R–1" districts. ·*See* Complaint and Petition for Writ of Certiorari and for Permanent Injunctive Relief [Doc. # 1]. Presumably, this is because Janet Stevenson, the only individual plaintiff in this action, had not been permitted to put a manufactured home on her lot, which had been zoned "R–1."

*Gratiot Sanitary Landfill v. Mich. Dep't of Natural Resources,* 504 U.S. 353, 359–61, 112 S.Ct. 2019, 2024, 119 L.Ed.2d 139 (1992); *Wyoming v. Oklahoma,* 502 U.S. 437, 453–55, 112 S.Ct. 789, 800, 117 L.Ed.2d 1 (1992); *Cooper v. McBeath,* 11 F.3d 547, 553 (5th Cir.), cert. denied, 512 U.S. 1205, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994). *When an ordinance discriminates against interstate commerce, either on its face or in its effect, it is therefore subject to stricter scrutiny: the city must show that the ordinance advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives. Oregon Waste,* 511 U.S. at 100–02, 114 S.Ct. at 1351; *Fort Gratiot,* 504 U.S. at 366–67 112 S.Ct. at 2027.

■ *Determination of Appropriate Legal Test.*—In order to decide which of the above tests to apply, this Court must determine, as stated in the previous Memorandum Opinion, at 17, whether Ordinance 1501 regulates evenhandedly with only incidental effects on interstate commerce, or whether it discriminates against interstate commerce.[16] *See Fulton Corp. v. Faulkner,* 516 U.S. 325, ——, 116 S.Ct. 848, 854, 133 L.Ed.2d 796 (1996). The Supreme Court has recognized that there is no "clear line" separating legislation that is subject to the stricter standard and that subject to the more flexible *Pike* analysis. *Chemical Waste,* 504 U.S. at 343 n. 5, 112 S.Ct. at 2014 n. 5; *Brown–Forman Dis-*

*tillers v. New York State,* 476 U.S. 573, 579, 106 S.Ct. 2080, 2084, 90 L.Ed.2d 552 (1986).

Plaintiff's Motion argues strenuously that the Ordinance 1501's exclusion of manufactured homes from "R–I" districts creates a discriminatory effect on interstate commerce, and therefore that stricter scrutiny must be applied. It is Plaintiff's burden to show that the Ordinance discriminates against interstate commerce, so as to warrant stricter scrutiny. *See Hughes,* 441 U.S. at 336, 99 S.Ct. at 1736.

■ Plaintiff's Motion makes several arguments in support of reconsideration. First, Plaintiff argues that this Court erred "by holding that discrimination with only a limited effect on interstate commerce is not actionable under the Dormant Commerce Clause." Plaintiff's Motion, at 6. Plaintiff misstates this Court's holding, which was not that the Ordinance was discriminatory with only "limited effects" on interstate commerce, but rather that it was an evenhanded regulation with incidental effects.[17] While the Supreme Court's teachings indeed do state that the *amount* of discrimination is irrelevant, once discrimination is established, Plaintiff has not met its initial burden of establishing that the Ordinance is in fact discriminatory.[18] Plaintiff's argument has bypassed the threshold question: Is Ordinance 1501 an evenhanded regulation with incidental effects on interstate commerce, rather than a discriminatory measure? [19]

16. Plaintiff does not argue that the Ordinance is facially discriminatory against interstate commerce; Plaintiff argues instead that the Ordinance is discriminatory in its effect.

17. Much of Plaintiff's argument for reconsideration flows from this Court's prior statement that "Ordinance 1501 regulates evenhandedly and that, since HUD-code manufactured homes may flow freely into La Porte, there is only an incidental effect, if any, on interstate commerce." Memorandum Opinion, at 17. This sentence, though perhaps unartfully drafted, did not hold that the more flexible *Pike* analysis applied *because* of the ordinance's limited effect on interstate commerce. Rather, as clarified in this Order, the Court holds that the *Pike* analysis applies because Ordinance 1501 is an evenhanded zoning regulation with only incidental effects on interstate commerce.

18. As Plaintiff correctly points out, the volume of commerce affected by the ordinance has no relevance to the determination of whether or not the ordinance is discriminatory. *See, e.g., Wyoming,* 502 U.S. at 455, 112 S.Ct. at 801 ("[t]he volume of commerce affected measures only the *extent* of the discrimination; it is of no relevance to the determination whether a State has discriminated against interstate commerce") (emphasis original). However, the Court notes that the *Wyoming* Court also held that the statute in question was discriminatory on its face and in its effect, and therefore that the stricter scrutiny test was appropriate. *Id.*

19. Plaintiff also blurs the concept of "discriminatory effect" with that of a "burden" on interstate commerce. While discriminatory effect is prohibited, a burden on interstate commerce is not necessarily unconstitutional. *See infra* at 610–611.

Second, Plaintiff argues that this Court improperly weighed the evidence when assessing the effects of the Ordinance's contested provision. Plaintiff's Motion for Reconsideration points out to the Court for the first time that "R–I" districts comprise a large percentage of the residential area of La Porte. City of La Porte Zoning Map (attached to Supplemental Report of Waldo S. Luedemann, Jr. (attached to Affidavit of Waldo S. Luedemann, Jr. (Exhibit P to Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment [Doc. # 17])))) ("Zoning Map"). Furthermore, although manufactured housing is permitted in La Porte's "R–2" and "R–3" districts, certain conditions are imposed before it can be placed there. Ordinance (Exhibit A1 to Defendants' Original Motion) § 5–600, at 32–33. The "MH" district—the only district in which manufactured housing may be placed without restriction—is a very small percentage of the City's residential area. *See* Zoning Map. By

contrast, industrial (or modular) homes are permitted in all residential zones of La Porte, although the Ordinance specifies that the housing must be on a permanent foundation system. Ordinance, § 5–600, at 32.[20] Plaintiff alleges that industrialized homes are manufactured exclusively in Texas,[21] and therefore argues that the Ordinance is discriminatory against out-of-state interests who produce manufactured homes and that the magnitude of the Ordinance's effect on interstate commerce should not be analyzed. Plaintiff's Motion, at 14–16.

Plaintiff's evidence about the relative size of La Porte's residential districts and the conditions on manufactured homes placed in "R–2" and "R–3" districts may indicate that La Porte's exclusion of manufactured homes from "R–1" districts has a perceptible effect on interstate commerce.[22] The Court need not and does not decide this issue, however.

20. Although this evidence now relied upon by Plaintiff was included among the voluminous exhibits filed with the original summary judgment papers, it was not discussed or referred to in the briefing. *See Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir.1996) (Rule 56 "saddles the non-movant with the duty to 'designate' the specific facts in the record that create genuine issues precluding summary judgment, and does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition"). Plaintiff's prior summary judgment briefing—including Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment [Doc. # 17], Plaintiff's Supplemental Response in Opposition to Defendants' Motion for Summary Judgment [Doc. # 43], and Plaintiff's Motion for Partial Summary Judgment [Doc. # 46]—did not mention the relative sizes of La Porte's various residential districts or the conditions placed on manufactured homes in "R–2" and "R–3" districts. Nor does the briefing identify the Zoning Map, which is buried among Plaintiff's numerous exhibits as one of many attachments to Luedemann's various affidavits and reports, all of which were filed together as Exhibit P.

21. Defendant points out that Texas law permits industrialized housing to be built in other states, and that industrialized housing must meet or exceed certain national building codes. Defendants' Response, at 6; *see* Tex.Rev.Civ. Stat. Ann. art. 5221f–1, §§ 2(a) & 4(c) (Vernon 1987 & Supp.1996). There is no reason why industrialized homes (which are modular, *i.e.,* built in prefabricated pieces and then assembled on-site), could not be transported across state lines. *See*

Tex.Rev.Civ. Stat. Ann. art. 5221f–1, § 1(1) (Vernon 1987). Nor is there any indication that manufactured homes are not being constructed in Texas.

22. *See* The Effects of Zoning on New Manufactured Housing Sales (attached to Affidavit of Gordon Otto (Exhibit O to Original Response)), at § C (total lost sales attributed to La Porte's restrictive zoning is $1,720,097 in 1994); Supplemental Report of Gordon H. Otto (Exhibit B to Supplemental Disclosure of Experts [Doc. # 23]), at § 6 (almost three times as many manufactured homes were installed in Vidor, which does not restrict their placement, than in La Porte, despite the fact that La Porte has almost 2.5 times as many households).

Plaintiff's proof is extremely weak. The statements made in the submitted reports are vague, largely unquantified and unpersuasive. There are many variables that would need to be analyzed to ascertain conclusively whether in fact there was an identifiable and statistically significant impact on interstate commerce resulting from the prohibition of manufactured homes from a segment of a single city, La Porte, amounting to less than ten (10) square miles of land. *See* Luedemann Affidavit (Exhibit P to Original Response), at 9 (La Porte encompasses an area of 18.33 square miles); Zoning Map (approximately 50% of La Porte is zoned "R–1"). One variable, for example, is whether people in any numbers in fact want to move manufactured homes into the R–1 districts. Moreover, the Court cannot ascertain on this record whether a single comparison with the City of Vidor is demographically or socio-economically relevant.

Even assuming a perceptible burden on interstate commerce, it does not necessarily follow that Ordinance 1501 is impermissibly discriminatory against interstate commerce, and therefore can trigger stricter scrutiny. Rather, "the real question is whether the [challenged legislative action] is valid *despite its undoubted effect on interstate commerce,*" and for this inquiry, it must be determined whether to apply the *Pike* analysis or stricter scrutiny. *See C & A Carbone,* 511 U.S. at 389–91, 114 S.Ct. at 1682 (emphasis added); *see also Lewis v. BT Investment Managers, Inc.,* 447 U.S. 27, 36, 100 S.Ct. 2009, 2015, 64 L.Ed.2d 702 (1980) ("in the absence of conflicting federal legislation, the States retain authority under their general police powers to regulate matters of 'legitimate local concern,' *even though interstate commerce may be affected*") (emphasis added). Indeed, in *Clover Leaf,* a case factually analogous to the one at bar, the Supreme Court noted that a state statute burdened interstate commerce, but nevertheless applied the *Pike* test in order to determine whether or not the statute was unconstitutional. *Clover Leaf,* 449 U.S. at 472–73, 101 S.Ct. at 728–29.[23]

Upon reconsideration, viewing all evidence in the light most favorable to Plaintiff, the Court again holds that application of stricter scrutiny is not warranted. La Porte's exclusion of manufactured homes from "R–1" districts is an evenhanded zoning regulation. Other cases analyzing Commerce Clause challenges to zoning ordinances have reached the same conclusion, and have applied the *Pike* test.

The First Circuit recently rejected a Commerce Clause challenge to a "cease and desist" order issued by the town of Plaistow, New Hampshire, which prohibited heavy commercial trucking traffic to and from the town terminal in the late night hours. The town's order imposed the nighttime restrictions because of the "odors, smoke, fumes, noise and vibration" resulting from the traffic, and was issued pursuant to a zoning ordinance which prohibited "uses that may be obnoxious or injurious by reason of the production or emission of odors, dust, smoke, refuse matter, fumes, noise, vibration or other similar conditions, or that are dangerous to the comfort, peace, enjoyment, health or safety of the community." *New Hampshire Motor Transport Ass'n v. Town of Plaistow,* 67 F.3d 326, 327–28 (1st Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1352, 134 L.Ed.2d 521 (1996). The Court concluded without difficulty that the case did not involve discrimination against interstate commerce, and proceeded to hold, under the *Pike* test, that the burdens on interstate commerce created by the time restrictions were not clearly excessive to the benefits conferred on the town's citizens, noting that the curfew was "akin to zoning and traffic restrictions traditionally applied on a local level." *Id.* at 332–33.

Similarly, the Tenth Circuit, in evaluating a Commerce Clause challenge to a county's hazardous waste zoning ordinance, held that the ordinance's site conditions had to be evaluated under the *Pike* test, rather than the stricter test "reserved for statutes that explicitly, or by application, discriminate based upon the origin of the article of commerce," because the site conditions applied equally to hazardous waste generated within the county and outside the county, and "confer[red] no advantages on in-state entities seeking to store, treat, recycle, or dispose of [hazardous waste] as against out-of-state firms." *Blue Circle Cement, Inc. v. Board of County Commissioners,* 27 F.3d 1499, 1511–12 (10th Cir. 1994). *See also Old Bridge Chemicals, Inc. v. New Jersey Dep't of Environmental Protection,* 965 F.2d 1287, 1294 (3d Cir.), *cert. denied,* 506 U.S. 1000, 113 S.Ct. 602, 121 L.Ed.2d 538 (1992) (*Pike* analysis applied to

---

**23.** Plaintiff also argues that this Court's decision was in error because it "suggests that La Porte can avoid a finding of discrimination simply by demonstrating accommodation in certain geographic areas." Plaintiff's Motion, at 5; *see Fort Gratiot,* 504 U.S. at 364, 112 S.Ct. at 2024 ("a State (or one of its political subdivisions) may not avoid the strictures of the Commerce Clause by curtailing the movement of articles of commerce through subdivisions of the State, rather than through the State itself"). However, La Porte avoids such a finding not because only portions of the City are affected by the exclusion, but rather because, as stated herein, Ordinance 1501 is an evenhanded zoning regulation and its effects are merely incidental to the Ordinance's application.

evaluate Commerce Clause challenge to New Jersey's statutory definition of "solid waste," which was more expansive and stringent than federal definition and therefore caused certain waste in interstate shipment to be subject to federal hazardous waste regulations); *Wood Marine Serv., Inc. v. City of Harahan,* 858 F.2d 1061, 1064–65 (5th Cir.1988) (zoning ordinance, which restricts private commercial development on portion of riverbank, does not discriminate against interstate commerce; ordinance is directed at local landowners alone, and its purpose is not to favor local economy but to stop further commercial development within city's boundaries).[24]

Plaintiff has cited the Court to no cases in which stricter scrutiny under the Commerce Clause was applied to a zoning ordinance. This Court declines to be the first.

Ordinance 1501 bans *all* manufactured homes, whether constructed in Texas or elsewhere, from "R–1" districts. An incidental effect of this regulation is that the placement in La Porte of industrialized homes, which are not similarly banned from "R–1" districts, is less restricted than the placement of manufactured homes. Plaintiff argues that La Porte's restriction on the location of manufactured houses impermissibly favors the Texas industrialized housing industry. However, in *Clover Leaf,* the Supreme Court rejected a similar argument in an analogous setting. The Court held that although the Minnesota pulpwood industry stood to gain from the statute's ban on plastic nonreturnable bottles, the statute nevertheless was an evenhanded regulation because it applied without regard to whether the milk, the containers, or the sellers came from inside or outside Minnesota. *Id.* In La Porte, manufactured housing is banned from "R–1" districts, regardless of the origin of the housing.[25] The advantage to Texas' industrialized housing industry, like that to Minnesota's pulpwood industry, is an incidental effect of this evenhanded regulation.

Where legislative objectives other than economic protectionism are "credibly advanced" and there is no "patent discrimination" against interstate trade, the courts are to apply the more flexible *Pike* test. *Chem. Waste,* 504 U.S. at 343 n. 5, 112 S.Ct. at 2014 n. 5 (citing *Philadelphia,* 437 U.S. at 624, 98 S.Ct. at 2535–36); *SSC Corp. v. Town of Smithtown,* 66 F.3d 502, 509–10 (2d Cir. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 911, 133 L.Ed.2d 842 (1996); *SDDS, Inc. v. State of South Dakota,* 47 F.3d 263, 269 (8th Cir.1995); *GSW, Inc. v. Long County, Ga.,* 999 F.2d 1508, 1516 (11th Cir.1993). This is such a case. La Porte has credibly advanced legislative objectives other than economic protectionism for the Ordinance's exclusion of manufactured homes from "R–I" districts—namely, preservation of property values. *See supra* at 605–608 (rational basis discussion). Whereas cases applying stricter scrutiny typically involve situations in which the basis for differential treatment of in-state and out-of-state goods is the origin of those goods,[26] the contested provision of La Porte's

---

**24.** The Fifth Circuit held in *Wood Marine* that the zoning ordinance at issue created *no* burden on interstate commerce. *Wood Marine,* 858 F.2d at 1065. Similarly, the Court is unconvinced that the exclusion of manufactured homes from "R–1" districts creates a burden on interstate commerce. *See supra* at 610–611.

**25.** In *C & A Carbone,* the Supreme Court stated that a town's flow control ordinance requiring all nonhazardous solid waste within a town, regardless of its origin, to be deposited at a certain transfer station (and thereby favoring one operator) was "no less discriminatory" because instate or in-town processors were also disadvantaged by the ordinance. *C & A Carbone,* 511 U.S. at 389–91, 114 S.Ct. at 1682. This statement, of course, does not suggest that this Court may not consider, as evidence of Ordinance 1501's evenhandedness, the fact that both instate and out-of-state manufactured homes are banned from "R–1" districts. Indeed, as noted above, the *Clover Leaf* Court looked to analogous evidence. Moreover, whereas the Supreme Court in *C & A Carbone* held that the flow control ordinance was discriminatory because "it allow[ed] only the favored operator to process waste that is within the limits of the town," *id.,* no such favoritism or discrimination is involved in the case at bar.

**26.** *See, e.g., Oregon Waste Systems v. Dep't of Environmental Quality,* 511 U.S. 93, 97–100, 114 S.Ct. 1345, 1349–50, 128 L.Ed.2d 13 (1994) (Oregon surcharge imposed on waste generated out-of-state patently discriminates against interstate commerce, because the statutory determinate for the fee is the origin of the waste); *Chem. Waste,* 504 U.S. at 342–45, 112 S.Ct. at 2014–15 (Alabama's additional fee for disposal of hazardous waste is imposed only on waste generated out-

Ordinance 1501 does not distinguish between manufactured homes and industrialized homes based on their respective origins. The exclusion of manufactured homes from "R–1" districts is not "basically a protectionist measure," but "can fairly be viewed as a law directed to legitimate local concerns, with effects upon interstate commerce that are only incidental." *Philadelphia*, 437 U.S. at 624, 98 S.Ct. at 2535–36. The Court holds that Plaintiff has not met its burden to show that Ordinance 1501 discriminates against interstate commerce.

■ *Application of the Pike Test.*—The only remaining question is, therefore, whether the incidental burden placed on interstate commerce by the exclusion from "R–1" districts is "clearly excessive" to the putative local benefits. *Pike*, 397 U.S. at 142, 90 S.Ct. at 847. The Supreme Court has stated that "[a] nondiscriminatory regulation serving substantial state purposes is not invalid simply because it causes some business to shift from a predominantly out-of-state industry to a predominantly in-state industry," but is only invalid "if the burden on interstate commerce clearly outweighs the State's legiti-

mate purposes." *Clover Leaf*, 449 U.S. at 474, 101 S.Ct. at 729.

A municipality such as La Porte clearly has the power to impose zoning restrictions, even should interstate commerce be affected. Generally, " 'there is a residuum of power in the state to make laws governing matters of local concern which nevertheless in some measure affect interstate commerce or even, to some extent, regulate it.' " *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 350, 97 S.Ct. 2434, 2445, 53 L.Ed.2d 383 (1977) (quoting *Southern Pac Co. v. Arizona, ex rel. Sullivan*, 325 U.S. 761, 767, 65 S.Ct. 1515, 1519, 89 L.Ed. 1915 (1945)); *see supra* at 611–612 (discussing Commerce Clause challenges to zoning ordinances). Zoning is a well-established as a valid exercise of local government's police power. *Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365; 47 S.Ct. 114, 71 L.Ed. 303 (1926); *SDJ, Inc. v. City of Houston*, 837 F.2d 1268, 1278 (5th Cir.1988), *cert. denied*, 489 U.S. 1052, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989). As with other traditional areas of local regulation, La Porte's zoning decisions must be afforded considerable deference.[27]

---

side state, and therefore discriminates against interstate commerce); *Fort Gratiot*, 504 U.S. at 363–67, 112 S.Ct. at 2026–27 (waste import restrictions of Michigan statute, which provide that solid waste generated in another county, state or country cannot be accepted for disposal unless explicitly authorized by receiving county, discriminate against interstate commerce; there is no valid health and safety reason for limiting the amount of waste received from outside the state, but not the amount received from inside the state); *Wyoming v. Oklahoma*, 502 U.S. 437, 455, 112 S.Ct. 789, 800–01, 117 L.Ed.2d 1 (1992) (Oklahoma statute requiring coal-fired electric utilities to burn mixture containing at least 10% Oklahoma-mined coal is discriminatory, because statute purports to exclude coal mined in other states based solely on its origin). *Cf. Maine v. Taylor*, 477 U.S. 131, 106 S.Ct. 2440, 91 L.Ed.2d 110 (Maine statute prohibiting importation of live baitfish is discriminatory against interstate commerce because out-of-state baitfish are banned based on their origin; however, since nonnative species pose serious threat to native fish, Maine had legitimate reasons, apart from origin of out-of-state baitfish, for differential treatment).

**27.** See *Wood Marine*, 858 F.2d at 1066 (zoning decisions entitled to great deference); *Star Satel-*

*lite, Inc. v. City of Biloxi*, 779 F.2d 1074, 1079 (5th Cir.1986) (zoning decisions afforded considerable deference). *See also Old Bridge Chemicals*, 965 F.2d at 1291 (legislation in areas of peculiarly strong state interest is subject to "very deferential review" under Commerce Clause); *Juzwin v. Asbestos Corp.*, 900 F.2d 686, 689 (3d Cir.), *cert. denied*, 498 U.S. 896, 111 S.Ct. 246, 112 L.Ed.2d 204 (1990) (same); *Burlington Northern Railroad Company v. Nebraska*, 802 F.2d 994, 999 (8th Cir.1986) (state power to regulate commerce is greatest when state acts on matters of local concern); *L & L Started Pullets, Inc. v. Gourdine*, 592 F.Supp. 367, 374 (S.D.N.Y. 1984) (Sofaer, J.) (state regulations that affect interstate commerce are presumptively valid where they are exercises of traditional police powers), *aff'd*, 762 F.2d 1 (2d Cir.1985). As the Supreme Court has stated, the factfinder in a Commerce Clause dispute "certainly [is] not authorize[d] . . . to resolve conflicts in the evidence against the legislature's conclusion or even to reject the legislative judgment on the basis that without convincing statistics in the record to support it, the legislative viewpoint constitutes nothing more than . . . 'pure speculation'." *Brotherhood of Locomotive Firemen & Enginemen v. Chicago, Rock Island & Pacific R.R. Co.*, 393 U.S. 129, 139, 89 S.Ct. 323, 328, 21 L.Ed.2d 289 (1968).

La Porte's exclusion of manufactured housing from "R–1" districts serves the legitimate municipal goal of preservation of property values. As noted previously, Plaintiff has presented some evidence that there may be a burden on interstate commerce resulting from La Porte's exclusion of manufactured homes from "R–1" districts. *See supra note* 22 and accompanying text. However, as a matter of law, this alleged burden, even if accepted as true, does not "clearly exceed" the substantial local benefits that result from the challenged provision of Ordinance 1501, especially when the City's zoning decisions are given their due deference.[28]

In interpreting the Commerce Clause, courts consistently have been guided by the principle that "economic protectionism" between the several states, whether in legislation's purpose or only in its effects, is prohibited. *See C & A Carbone,* 511 U.S. at 390, 114 S.Ct. at 1682 ("[t]he central rationale for the rule against discrimination is to prohibit state or municipal laws whose object is local economic protectionism, laws that would excite those jealousies and retaliatory measures the Constitution was designed to prevent"); *see also Fulton Corp. v. Faulkner,* 516 U.S.

325, ——, 116 S.Ct. 848, 853, 133 L.Ed.2d 796 (1996) ("[i]n its negative aspect, the Commerce Clause prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors") (internal quotation marks and citations omitted). This is not a case that implicates such protectionism. Rather, La Porte has enacted a zoning ordinance which distinguishes between different types of housing, without regard to their origins. Such legislation is well within the traditional local powers of municipalities, and its incidental effects on interstate commerce, assuming that these effects in fact exist, do not clearly exceed the benefits to the La Porte community.

Upon reconsideration, La Porte's Motion for Summary Judgment on Plaintiff's Commerce Clause claim is again granted.[29]

## CONCLUSION

For the reasons stated herein, it is

**ORDERED** that the **Motion for Reconsideration** [Doc. # 51] is **GRANTED.** It is, however,

---

**28.** The extent of the burden on interstate commerce that will be tolerated by the Constitution depends on " 'the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate commerce.' " *Clover Leaf,* 449 U.S. at 471, 101 S.Ct. at 728 (quoting *Pike,* 397 U.S. at 142, 90 S.Ct. at 847). Plaintiff has made several proposals for alternative zoning provisions that would have a "lesser impact" on interstate commerce. However, Plaintiff's proposals are not adequate. Plaintiff proposes (1) a requirement that all manufactured homes in "R–1" districts be installed on permanent foundation systems, and (2) achieving uniformity of appearance "by requiring all homes to have minimum square footage, pitched roofs, conventional siding and roofing, and the like." Plaintiff's Original Response, at 35–36. However, Janet Stevenson's affidavit states that, even though she planned to install her manufactured home on a "permanent foundation which would have been bolted or welded to piers buried deep in the ground," she also valued the option of moving her home later. Stevenson Affidavit (Exhibit B to Original Response), at 3. This evidence belies Plaintiff's argument that transience could be defeated by permanent foundation systems. Moreover, Plaintiff's proposal for "uniformity" is unspecific and thus legally insufficient. Also, some appearance requirements may be argued to involve

"construction standards" which might be attacked on pre-emption grounds under the federal statute regarding HUD-code manufactured homes, 42 U.S.C. § 5401 *et seq. See, e.g., Georgia Manufactured Housing* decision, *supra* note 5, op. at 605 (holding that Spalding County ordinance's 4:12 roof pitch requirement for manufactured houses is pre-empted by federal law because it interferes with the federal statute's construction and safety requirements); *see also supra* at 604–605 (discussion of federal pre-emption).

**29.** Even if the Court were to apply the stricter scrutiny test, it appears that this result would not change. Plaintiff has presented no evidence that La Porte was motivated by economic protectionism when it enacted Ordinance 1501 excluding manufactured homes from "R–1" districts. *See Philadelphia,* 437 U.S. at 626, 98 S.Ct. at 2536–37 (protectionism can reside either in legislative means or legislative ends). Furthermore, even assuming *arguendo* that Plaintiff had demonstrated discriminatory effect, La Porte has demonstrated that the exclusion of manufactured homes from "R–1" districts is justified by "a valid factor unrelated to economic protectionism"—namely, preservation of property values. *See Fort Gratiot,* 504 U.S. at 359, 112 S.Ct. at 2024; *Cooper,* 11 F.3d at 553.

**FURTHER ORDERED** that Plaintiff's request that this Court vacate its previous Memorandum Opinion is **DENIED.**