United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 10, 2004**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

———————————

No. 03-20264

———————————

MILLENNIUM PETROCHEMICALS, INC.,

Plaintiff-Counter Defendant-
Appellant,

versus

BROWN & ROOT HOLDINGS, INC.,
Individually and as successor to Brown and Root USA,
Inc.; et al.,

Defendants,

BROWN & ROOT, INC., a Delaware Corporation,

Defendant-Appellee,

and

KELLOGG-BROWN & ROOT, INC.,
doing business as Brown & Root, formerly known as
Brown & Root USA, Inc., formerly known as Brown & Root, Inc.

Defendant-Counter Claimant-
Appellee.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
(01-CV-3435)

———————————————————————

Before DAVIS, WIENER and STEWART Circuit Judges.

CARL E. STEWART, Circuit Judge:[*]

Millennium Petrochemicals, Inc. ("Millennium") appeals the district court's denial of its motion for partial summary judgment, which sought a declaration that the indemnity provisions in a maintenance contract (the "Contract") with Brown & Root, Inc. and Kellogg-Brown & Root, Inc. (collectively "Brown & Root"), were valid and enforceable, and that Brown & Root owed Millennium an indemnity obligation for asbestos-related claims filed against Millennium by individual plaintiffs. Millennium also appeals the district court's grant of summary judgment in favor of Brown & Root holding that the indemnity provisions in the Contract unambiguously precluded an indemnity obligation on the part of Brown & Root for the underlying asbestos claims. Because we find the disputed indemnity provisions unambiguously provides Millennium indemnity for asbestos-related claims, we reverse the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

Millennium and Brown & Root entered into the Contract in 1961 under which Brown & Root would perform maintenance services at one of Millennium's plants.[1] In 1973, the parties amended the 1961 indemnity provision in order to clarify the respective obligations of the parties regarding any

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The Contract included an indemnity provision which provided:

ARTICLE 17. LIABILITY
[Brown & Root] shall indemnify and save harmless [Millennium] from all claims, suits or actions and damages and costs of every name and description to which [Millennium] may be subjected to by reason of injury to the person or property of another resulting from negligence or carelessness on the part of [Brown & Root], [its] employees, agents or subcontractors in the movement of equipment or supplies, or by or on account of any negligent act or omission of [Brown & Root's] employees, agents or subcontractors, if any.

2

third-party suits against Millennium.[2]  The parties again amended the indemnity provision in 1994.[3]

Under the terms of the Contract, either party could terminate it with 30 days written notice.  By letter

dated April 5, 1995, Millennium terminated the contract.

Beginning in 1998, Brown & Root employees filed suits in Texas state courts claiming injuries

from exposure to asbestos in Millennium workplaces and naming Millennium as premises defendant.

---

[2] The 1973 amended provision was retitled and provided:

> ARTICLE 17. INDEMNITY AND LIABILITY
> [Brown & Root] shall indemnify and save harmless [Millennium] from all claims, suits or actions and damages and costs of every name and description to which [Millennium] may be subjected to by reason of injury to the person of any employee of [Brown & Root's] performance of work hereunder or resulting from the presence on or about [Millennium's] premises of the agents, servants or employees of [Brown & Root], **even though such injury be caused in part by the negligence of [Millennium], its agents, servants or employees.** [Brown & Root] shall further indemnify and hold harmless [Millennium] from and against all claims, damages, losses and expenses including attorneys' fees arising out of or resulting from [Brown & Root's] performance of work undertaken hereunder, provided that any such claim, damage, loss or expense (a) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Existing Facilities of [Millennium] or the Work itself), and (b) is caused in whole or in part by any negligent act or omission of [Brown & Root], any subcontractor, or anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by [Millennium] (emphasis added).

[3] The 1994 amended provision provided:

> ARTICLE 17. INDEMNITY AND LIABILITY
> [Brown & Root] agrees to defend, indemnify and save harmless [Millennium], its officers, directors, agents and employees, against any and all claims, suits, damages, fines, penalties, orders, judgments, liabilities, loss and expense, including reasonable attorney's fees and other legal expenses, by reason of liability imposed or claimed to be imposed upon [Millennium] arising out of or resulting from (a) bodily injuries, sickness or disease, including death, at any time resulting therefrom, sustained by any person whosoever including employees of [Millennium], [Brown & Root], and their affiliates, subcontractors, and vendors, and third parties, or (b) damage to property (excluding the Work and located at the plant), sustained by any person or persons to the extent arising out of or in consequence of...[Brown & Root's], or ...[Brown & Root's] agent's, employees', subcontractors', vendors' or affiliates' (i) negligent acts or omissions in the performance of or (ii) breach of this Agreement.

3

Citing the indemnity provisions of the Contract, Millennium notified Brown & Root of the claims and requested indemnity, which Brown & Root refused to provide. Millennium then filed a declaratory judgment action in which it moved for partial summary judgment declaring that the indemnity provisions were valid and enforceable and that Brown & Root owed Millennium an indemnity obligation for the plaintiff's claims. The district court, however, held that there was no valid and enforceable indemnity obligation, and that Brown & Root had no duty to indemnify Millennium. The district court held that Millennium's 1995 termination of the Contract terminated the indemnity obligations as a matter of law, even for those Brown & Root employees who had been performing services at Millennium facilities under the Contract before it was terminated in 1995. Alternatively, the district court held that even if the 1995 termination of the Contract did not terminate Brown & Root's indemnity obligation, the 1994 amendment to the Contract effectively eliminated such obligation. The district court then granted Brown & Root's motion for summary judgment, dismissing Millennium's indemnity claims.

STANDARD OF REVIEW

This Court reviews the district court's grant of summary judgment *de novo*, applying the same standard on appeal that is applied by the district court. Lycon Inc. v. Juenke, 250 F.3d 285, 287 (5th Cir.), *cert denied,* 534 U.S. 892 (2001). "Under Federal Rule of Civil Procedure 56 (c), summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). The movant need not negate the opposing party's claims nor produce evidence showing an absence of a genuine factual issue, but may rely on the absence of evidence to support essential elements of opposing party's claims. International Assoc. of Machinists &

4

Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co., 812 F.2d 219, 222 (5th Cir. 1987). Contract interpretation, including the question of whether a contract is ambiguous, is a question of law subject to *de novo* review. Instone Travel Tech Marine & Offshore v. International Shipping Partners, Inc., 334 F.3d 423, 428 (5th Cir. 2003). A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation. Reliant Energy Services, Inc. v. Enron Canada Corp., 349 F.3d 816, 821-22 (5th Cir. 2003); Heritage Resources, Inc. v. Nationsbank, 939 S.W.2d 118, 121 (Tex. 1996). If any ambiguity exists in a contract, "a fact issue remains regarding the parties' intent" thus precluding a grant of summary judgment. Instone Travel, 334 F.3d at 431.

## DISCUSSION

I. Millennium's motion for summary judgment

Millennium requested the district court to hold, through a partial summary judgment order, that the indemnity provisions were valid and enforceable and that Brown & Root owed it an indemnity obligation for the underlying plaintiffs' asbestos-related claims. Because, as we explain below, the Contract language unambiguously indicates an intent by the parties to provide Millennium with the indemnification it seeks, we find that the district court erred in denying Millennium's summary judgment request for a declaratory judgment that Brown & Root owed an indemnity obligation.

II. Brown & Root's motion for summary judgment

A. 1995 termination of the Contract

The district court held that because the Contract was terminated pursuant to Millennium's April 5, 1995 letter, and the letter did not reserve any rights, any obligations Brown & Root owed

5

to Millennium were extinguished.  We disagree with this conclusion.

TEX. CIV. PRAC. & REM. CODE ANN. § 2.106(c) provides that upon "termination all obligations which are still executory on both sides are discharged but any right based on prior breach or performance survives."  As we have previously stated,  "we are aware of no Texas authority that provides that the termination of agreements automatically applies retroactively to extinguish vested rights." Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd., 99 F.3d 746, 754 (5th Cir. 1996).   Other circuits have also held that rights that have vested or accrued under a contract prior to the termination of the contract, are not automatically extinguished upon termination. See e.g., Premier Corp. v. Economic Research Analysts, Inc., 578 F.2d 551, 553-54 (4th Cir. 1978) (ruling that the expiration of a brokerage contract did not discharge a broker's indemnity obligation for illegal sales it made prior to expiration, when the indemnity action was brought subsequent to expiration); Standard Oil Co. of Calif. v. Perkins, 347 F.2d 379, 383-84 (9th Cir. 1965) (ruling that prior vested contractual rights may be extinguished only if parties intended to do so under subsequent contract).   The parties have not cited, nor has our research revealed, any cases from other circuits which hold otherwise.

This appeal therefore raises two key questions.  First, whether Millennium owed any obligations to Brown & Root under the Contract and successive amendments from 1961 through May 5, 1995, which would lead to a conclusion that the contract was truly executory on both sides, thus terminating any obligations that Brown & Root owed Millennium for this period.  Second, whether Millennium intended to extinguish any vested indemnity rights under the Contract due to the 1995 termination.  We answer both in the negative.

Millennium hired Brown & Root to perform maintenance services at Millennium's facility.

Millennium owed Brown & Root an obligation under the Contract to pay for the work Brown & Root performed, and to use Brown & Root's services until such time as the Contract was terminated. Brown & Root, for its part, owed an obligation to Millennium to perform the maintenance services. Brown & Root also owed, however, an indemnity obligation to Millennium for any claims it incurred due to injuries sustained by the Brown & Root's employees during the period of the Contract. This indemnity obligation was consideration offered by Brown & Root for becoming Millennium's maintenance provider. On May 5, 1995, Millennium owed no further obligations to Brown & Root because it had paid Brown & Root for any work it had done, and had used Brown & Root as its maintenance provider until the Contract was terminated. On Brown & Root's side, it had performed all the maintenance work that it was required to do under the Contract and its successive amendments. There is no assertion by Brown & Root that there existed any unfulfilled obligations under the Contract on Millennium's part. Thus, the only remaining obligation on either side was Brown & Root's indemnity obligation.

Brown & Root, and the district court, also cite Griffin Indus., Inc. v. Foodmaker, Inc., 22 S.W.3d 33, 36 (Tex. App. - Houston, [14th Dist.] 2000), to support the argument that under Texas law an indemnitor's contractual indemnity obligation absolutely terminates upon termination of a contract by its terms. However, their reliance on that case is misplaced. In Griffin Indus., unlike here, the indemnitee's employee was injured (and suit was filed) after the expiration of the contract that contained the indemnity provision. Id. at 35-36. Both this court and the Texas Supreme Court have held that an asbestos-related injury occurs at the moment of exposure to the asbestos. See e.g., Guaranty Nat'l Ins. Co. v. Azrock Indus., Inc., 211 F.3d 239, 249 (5th Cir. 2000) (For purposes of determining insurance coverage, injury occurred at time of asbestos exposure, rather than at time

7

exposure-related disease manifested itself); Pustejovsky v. Rapid-American Corp., 35 S.W.3d 643, 647 (Tex. 2000) ("[The plaintiff's] injury is ... the inhalation of fibers and the invasion of his body by those fibers, thus causing him physical damage.") (quoting Gideon v. Johns-Manville Sales Corp., 761 F.2d 1129, 1137 (5th Cir. 1985). In this case, it is undisputed that at least some of the claimants may have been exposed to the asbestos between 1973 and 1993, and hence prior to the termination of the Contract. While the Griffin Indus. court pointed out that the indemnity action in that case was not filed until after the contract had expired, nothing in that opinion indicates that had the injury occurred prior to the expiration of the contract, the indemnitor's obligation to indemnify the indemnitee would have been terminated. 22 S.W.3d at 36. We further note that no where in the May 5, 1995 termination letter does Millennium indicate an intent to extinguish or surrender any rights that may have vested in its favor under the Contract.

Because at least some of the alleged underlying asbestos injuries at issue here may have occurred prior to the termination of the Contract, and the Contract was not "executory" on both sides, thereby precluding extinguishment of Brown & Root's indemnity obligations under Section 2.106 (c), we hold that the district court erred in ruling that the 1995 termination of the Contract extinguished all of Brown & Root's indemnity obligations.

B.      The 1994 amendment

        Intent of the parties

The district court also held that as a matter of law the 1994 Amendment was adopted with the mutual consent and understanding of both Millennium and Brown & Root, and that it was adopted for the express purpose of superceding all previous amendments to the Agreement's indemnity provisions, reasoning that "it is well established that a modified contract prevails over an

8

old contract to the extent of any inconsistencies." We disagree.

As Millennium correctly points out, the explicit language of the May 20, 1994 amendment clearly stated that it was to be retroactively "effective beginning January 1, 1994." Furthermore, there is no language in the 1994 amendment stating that it supercedes all previous versions of the Contract. Certainly, it would appear that by deleting the language of the 1973 version of the Contract that provided Millennium indemnity protection for its own negligence the parties intended to remove such protection in the future. However, it is by no means certain, considering the expressly stated effective date of the 1994 Amendment, that Millennium also intended the amendment to apply retroactively to any pre-1994 periods as well.

Under Texas law contract terms are to be given their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense. See Lopez v. Munoz, Hockema & Reed, L.L.P., 22 S.W.3d 857, 864 (Tex. 2000). Further, when ascertaining the intent of parties from written expressions, a court should read all parts of a contract together, ensuring that each provision of such contract are given effect and none are rendered meaningless. Instone Travel, 334 F.3d at 428 (applying Texas law). Here, the plain contract terms of the May 20, 1994 amendment provide that it was to be retroactively effective beginning January 1, 1994. Under the interpretation advanced by Brown & Root -- that the May 20, 1994, amendment effectively superceded and extinguished application of all the previous indemnity clauses -- the retroactivity language is rendered superfluous and meaningless. Only if the language of the May 20, 1994 amendment is read out of the contract can Brown & Root claim that it was Millenium's intent to have it apply retroactively prior to January 1, 1994. But, disregarding such language would violate the jurisprudence of this Court and the Texas Supreme Court.

While Brown & Root points to cases standing for the principle that an amendment to a contract supercedes the earlier version of the agreement to the extent of any inconsistencies,[4] it has not cited any case supporting its more specific proposition that an amendment or subsequent contract will automatically retroactively effect any rights or obligations that may have vested or accrued under a prior version of the agreement. Nor could it do so. Texas courts have made clear that rights or obligations that may have vested or accrued under previous versions of a contract can only be modified or extinguished through the inclusion of express language that manifests such intent. See Lake LBJ Mun. Utility Dist. v. Coulson, 839 S.W.2d 889, 887 (Tex. App.-Austin 2001, no pet.) (finding that an amendment to a service contract which stated new territory to be serviced, but which did not mention territory covered under the previous contract, did not show that parties intended to extinguish service provider's obligation to continue to service territory listed in that earlier agreement); Hall v. Professional Leasing Assocs., 550 S.W.2d 392, 393-94 (Tex. App.-Austin 1992, no writ.) (finding that a purchase contract which provided that equipment subject to an existing lease contract was to be purchased outright by lessee, showed the intent of both the lessee and lessor to extinguish any *prospective* lease payment obligations under the lease, because by law the lessor was only entitled to lease payments for the equipment to the extent lessor still possessed title at the time the lessee was using the equipment) (emphasis added).

In this case, the absence of any language expressly indicating that the 1994 amendment was to apply to pre-1994 periods, and the inclusion of language making the May 20, 1994 amendment

---

[4]Brown & Root cites Elson Thermoplastics v. Dynamics Systems, Inc., 49 S.W.3d 891, 898 (Tex. App. - Austin 2001, no pet.) (question as to whether subsequent contract was meant to supercede previous contract, or merely to supplement it under the merger doctrine, is determined from the parties' intent); Cadle Co. v. Henderson, 982 S.W.2d 543, 546 (Tex. App. - Austin 2001, no pet.) ("modified agreement takes place of the original"); Boudreax Civic Ass'n v. Cox, 882 S.W.2d 543, 547-48 (Tex. App. - Houston [1st Dist.] 1994, no writ.) ("modification to a contract creates a new contract that includes new modified provisions and the unchanged old provisions").

retroactively effective to January 1, 1994 strongly indicates that the parties intended the amendment to apply prospectively from January 1, 1994. We find Millennium's argument compelling that in the absence of a clear expression, the only reasonable interpretation of the Contract is that the parties intended the effective date to delineate the periods of work to which each of the three indemnity clauses would apply, an interpretation which would give effect to all the clauses in the contract. See Heritage Resources, Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996). Millennium is therefore entitled to summary judgment on this issue.

Timing of the plaintiffs' asbestos suits as it effects Millennium's<br>ability to bring indemnity actions against Brown & Root.

The district court held that the date that the underlying plaintiffs were exposed to the asbestos was irrelevant, and that an indemnity claim does not accrue, and thus become actionable, until all of the potential liabilities or damages of the indemnitee become fixed and certain. (citing Pustejosky v. Rapid-American, 35 S.W.3d 643, 653 (Tex. 2000) (causes of action for latent occupational diseases, such as asbestosis, do not accrue "until a plaintiff's symptoms manifest themselves to a degree or for a duration that would put a reasonable person on notice the he or she suffers from some injury and he or she knows, or in the exercise of reasonable diligence should have known, that the injury is work related."); Ingersoll-Rand Co. v. Valero Energy Corp., 997 S.W.2d 203, 210 (Tex. 1999) (time indemnity claim accrues). The district court concluded that because the underlying plaintiffs first filed claims in 1998, the earliest date on which these plaintiffs' asbestos symptoms manifested themselves would have been January 1, 1996, after the Contract had been terminated, and thus are not covered by any of the indemnity provisions.

The district court's decision appears to be based on an assumption that the indemnity provisions at issue here are "claims based," rather than "occurrence-based." As noted above, this

11

Court has considered at what point in time third-party coverage is triggered for asbestos-related cases in the closely analogous context of insurance. See Guaranty Nat'l Ins. Co. v. Azrock Indus., Inc., 211 F.3d 239, 249 (5th Cir. 2000). In Guaranty National Insurance, cognizant of the difficulty of assigning manifestation of asbestosis to a specific date, this court instructed that in assessing an insurer's coverage liability, courts must first identify when the exposure to asbestos occurred and then determine whether the policy was in effect at that time. Id.; accord In re CVA, Pilgrim, 267 B.R. 773, 779 (Bankr. W.D. Tex. 2001) (coverage is triggered in any policy period in which the exposure to the cause of injury occurred, even if the harmful effects of the exposure were not diagnosed until after the policy expired); Pilgrim Enters., Inc. v. Maryland Cas. Co., 24 S.W.3d 488, 497 (Tex. App.-Houston [1st Dist.] 2000, no pet.) (application of the accepted "exposure theory" to personal injury third-party insurance coverage cases does not require that the occurrence of the event which ultimately causes an injury be discovered while an insurance policy is still in effect for an insurance company to be liable). In insurance coverage cases, a court must also determine whether the policy was occurrence-based or claims-based in deciding what claims an insurance company is liable for after a policy has expired. See Pilgrim Enters., Inc., 24 S.W.3d at 497. If a policy is "claims-based," then only those injuries or damages that come to the attention of the insured and are made known to the insurer during the policy period will be covered. Id.

The same concerns that applied to assessing insurance coverage for asbestos cases also apply to asbestos cases in which it must be determined what event, occurrence or claim, triggers indemnity clause liability. In cases invo lving insurance coverage, while the point in time when the asbestos exposure occurred is important as to whether a particular policy's coverage applies, it is only when a plaintiff actually brings suit against the policy-holder -- sometimes long after the policy has expired

12

-- for injuries or illness resulting from the previous asbestos exposure that the insurance company actually becomes liable. See e.g., Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 821-22 (Tex. 1997). If the underlying plaintiff never becomes sick and/or does not sue the policy holder for the exposure, the insurance company will not be required to pay on its policy. Id.

Applying these principles in this context, we find that the language of the indemnity provisions are occurrence-based, not claims-based.[5] All three provisions state that Brown & Root will indemnify Millennium for claims which Millennium "may be subject to *by reason of injury to the person* of" Brown & Root employees. (emphasis added). The trigger is injury to a person during Brown & Root's performance of work under the Contract. Furthermore, the language of the 1973 provision does not contain a requirement that claims must be made during the Contract period to be covered. The provisions do not state, as the insurance policy did in Yancey, that they are strictly claims-based. Therefore, we find the parties intended an occurrence-based provision, and that coverage is triggered at the time asbestos exposures occurred, not when a claim is made. The district court inappropriately meshed together two separate but equally important events, and the points in time when those events occurred, i.e., the point in time when an underlying plaintiff is exposed to asbestos, and the point in time when such plaintiff becomes ill and brings suit against the indemnitee. While Millennium may not at the moment have an accrued indemnity claim for which it

---

[5] In Yancey v. Floyd West & Co., 755 S.W.2d 914, 918 (Tex. App.-Fort Worth 1988, writ denied), the Texas Court of Appeals held that an insurance policy was claims-based when its language stated in part:

> THIS IS A 'CLAIMS MADE' POLICY READ CAREFULLY...COVERAGE: To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as money damages because of any claim or claims first made against the insured *during the policy period,* arising out of any negligent act, error or omission, occurring subsequent to the retroactive date, in the conduct of the Insured's business...

13

can bring an action against Brown & Root, the district court's summary judgment ruling that Millennium is automatically barred from ever bringing an indemnity claim against Brown & Root because such claims would have had to have been brought prior to termination of the Contract is incorrect because the provisions are occurrence-based.

<u>Express negligence, fair notice and conspicuousness tests</u>

Finally, the district court held alternatively that because the 1994 amendment violated the "fair notice requirement" or "express negligence rule,"[6] Millennium is precluded from being indemnified by Brown & Root for liability or damages that resulted from Millennium's own negligence. This is so, the district court concluded, because the 1994 amendment deleted the portion of the 1973 provision which stated that Brown & Root had an obligation to indemnify Millennium for the latter's own negligence. (citing <u>U.S. Rentals, Inc. v. Mundy Service Corp.</u>, 901 S.W.2d 789, 791 (Tex. App. - Houston [14th Dist.] 1995, writ denied) ("Because indemnifying a party for its own negligence is an extraordinary shifting of the risk, the Supreme Court has applied a fair notice requirement to indemnity agreements")).

While the district court may have been correct in holding that the 1994 provisions would fail the "fair notice requirement" or "express negligence rule" for cases where Millennium was negligent,

---

[6] This rule provides:

1. A party's intent to be released from all liability caused by its own future negligence must be expressed in unambiguous terms within the four corners of the contract.
2. The indemnity clause must be "conspicuous" under the objective standard defined in the Uniform Commercial Code. A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed. A printed heading in capitals (as: Non-negotiable Bill of Lading) is conspicuous. Language in the body of a form is "conspicuous" if it is larger or other contrasting type or color. <u>Griffin</u>, 22 S.W3d at 37; TEX. BUS. & COM. CODE ANN. § 1.201(10) (1994).

this violation is only applicable for underlying asbestos-related cases that arose from exposures that occurred from January 1, 1994 through May 5, 1995 because, as we found above, the 1994 amendment did not supercede the 1973 provision retroactively to pre-1994 periods. Furthermore, we are not persuaded by Brown & Root's argument that the wording of the 1973 amendment does not meet the fair notice requirement. As Millennium correctly notes, "the fair notice requirements are not applicable when it is established that the indemnitor possessed actual notice or knowledge of the indemnity agreement." Dresser Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d 505, 508 (Tex. 1993). We hold that the record supports a finding that Brown & Root had knowledge of the indemnity clause, and that it was conspicuous. First, a review of the 1973 amendment reveals that one of Brown & Root's vice president's signed it. Second, the amendment is less than two pages in length. Third, the risk sharing part is not buried in a long provision, and is on the first page of the amendment. Fourth, the indemnity and liability clause is the sole subject of the amendment. And finally, there is no assertion on Brown & Root's part that they were in anyway unaware that the 1973 amendment was obligating them to indemnify Millennium for even its own negligence. Thus, the 1973 amendment does meet the "fair notice requirement" and "express negligence rule."

CONCLUSION

Because Millennium's 1995 termination of the Contract did not extinguish any of its rights to indemnity which may have vested, and because the language of the Contract unambiguously provides that the parties intended that injuries would be covered by the successive provisions in place at the time the injuries occurred, we REVERSE the decision of the district court granting Brown & Root summary judgment, REVERSE the district court's denial of Millennium's summary judgment

15

motion and RENDER judgment in favor of Millennium.

REVERSED.