**AEP TEXAS NORTH COMPANY,**
Plaintiff,

v.

**Paul HUDSON, Chairman of the Public Utility Commission of Texas, Julie Parsley, Commissioner of the Public Utility Commission of Texas, and Barry Smitherman, Commissioner of the Public Utility Commission of Texas, Defendants.**

**No.  A–04–CA–1069–LY.**

United States District Court,
W.D. Texas,
Austin Division.

Sept. 29, 2005.

David Chapman Duggins—argued b/f Ct., Clark, Thomas, & Winters, Barry Kent Bishop, Clark, Thomas, & Winters, Austin, J.A. Bouknight, Jr., Steptoe & Johnson LLP, Washington, DC, Larry W. Brewer, American Electric Power Co., Inc., Austin, for AEP Texas North Company, plaintiff.

Rex D. VanMiddlesworth, Andrews & Kurth, Mayor, Et Al, Karen P. Whitt, Andrews & Kurth, Mayor Day, Caldwell & Keeton, R. Lambeth Townsend, Lloyd, Gosselink, Blevins, Rochelle, et al, Steven A. Porter—argued b/f Ct., Lloyd Gosselink

Fowler Blevins & Mathews, Austin, TX, for Texas Industrial Energy Consumers, Cities of Abilene, Ballinger, Cisco, San Angelo and Vernon, Texas, Intervenor-plaintiffs.

Kristen L. Worman—argued b/f Ct., Hazen & Terrill, Austin, TX, for the Public Utility Commission of Texas, Paul Hudson, Chairman of the Public Utility Commission of Texas, defendants.

## MEMORANDUM OPINION AND ORDER

YEAKEL, District Judge.

Before the Court are Plaintiff AEP Texas North Company's Motion for Summary Judgment and Memorandum of Law in Support filed February 23, 2005 (Doc. ## 11, 12); Plaintiff's Statement of Material Facts filed February 23, 2005 (Doc. # 13); Commissioners' Response to Plaintiff's Statement of Material Facts filed April 1, 2005 (Doc. # 25); Commissioners' Response and Cross–Motion for Summary Judgment filed April 1, 2005 (Doc. ## 26, 27); Intervenor Cities' Response to Plaintiff's Motion for Summary Judgment filed April 1, 2005 (Doc. # 29); Plaintiff's Reply in Support of Summary Judgment and Opposition to Cross–Motion for Summary Judgment filed April 12, 2005 (Doc. ## 32, 33); Commissioners' Supplemental Brief in Support of Judgment filed May 27, 2005 (Doc. # 41); Intervenor Cities' letter brief filed May 27, 2005 (Doc. # 42); and Plaintiff's Response to Defendants' Supplemental Brief filed June 7, 2005 (Doc. # 43). On June 21, 2005, this Court held a hearing on the above-listed motions. Plaintiff AEP Texas North Company ("AEP Texas") appeared by counsel; Defendants the individual Commissioners (hereinafter referred to collectively as the "Commissioners") appeared by counsel; and Intervenors the Cities of Abilene, Ballinger, Cisco, San Angelo, and Vernon, Texas appeared

by counsel. Having carefully considered the motions, responses, replies, along with the summary-judgment evidence in the Texas Public Utility Commission ("PUC") record and the case law applicable to this action, this Court concludes that summary judgment should be granted in favor of AEP Texas, and that the Commissioners' cross-motion for summary judgment should be denied for the reasons set forth below.

## I. Background

AEP Texas is a wholly owned subsidiary of American Electric Power Company ("AEPC"), a multistate electric-utility holding company. AEPC's subsidiary companies provide electrical service to approximately five million customers in parts of eleven states. This cause involves a System Integration Agreement ("SIA") among nine of AEPC's operating companies that provides for an agent-the American Electric Power Service Corporation ("AEPSC")-to allocate "Trading and Marketing Realizations" that the AEPC system earns from a category of wholesale-electricity market transactions. The SIA is a wholesale rate schedule on file with the Federal Energy Regulatory Commission ("FERC").

AEP Texas is a party to the SIA. The SIA provides the contractual basis for the distribution of certain power supply costs and benefits between two zones of AEPC, the east zone and the west zone, corresponding to the premerger systems of AEPC and Central and South West Corporation ("CSW"), two public utility holding companies.[1] As a wholly owned subsidiary of AEPC, AEP Texas is also required to share revenues with its retail customers under the SIA.

On June 3, 2002, AEP Texas applied to the PUC to reconcile its fuel expenses and revenues for the period of July 1, 2000, through December 31, 2001. One issue before the PUC involved the amount of revenue that AEP Texas was required to share with its customers under the terms of the SIA and the Integrated Stipulation and Agreement approved by the Commissioners following the merger of AEPC and CSW. The service schedule at issue is Service Schedule D, which allocates the Trading and Market Realizations ("TMRs") on the system. The SIA provides that the TMRs, or profits, from off-system sales and purchases of power, energy, or capacity are to be allocated between the AEP east and west zones. Section 1.39 of the SIA defines TMRs as "the difference between (i) revenues collected from Trading and Marketing activities and (ii) the Out-of-Pocket Cost of such Trading and Marketing activities and any transmission cost related to such activities."

The SIA designates AEPSC to centrally calculate the TMRs. The SIA also sets forth a process for making such allocations. In the first stage, realizations are allocated such that the AEPC east and west zones receive the same amount of realizations as they did in the "Base Year" (July 1999 through June 2000). In the second stage, all profits above the amount earned during the Base Year are divided between the AEPC east and west zones according to their relative ownership of generating capacity. Once the TMRs have been allocated between the AEPC east and west zones, and AEP Texas receives its portion, the SIA specifies how AEP Texas is to share its revenue with its retail customers.

As part of its review of AEP Texas's application to reconcile fuel expenses and revenues, the Commissioners examined AEPSC's allocation of TMRs under the terms of the SIA. In calculating the realizations for the Base Year, AEPSC used

---

1. The merged entity took the name "American Electric Power Company."

"mark to market" accounting in which the "open" transactions, or transactions that had yet to be completed, were recorded at market value, while "closed" or completed transactions were recorded at the actual contract value. Both open and closed transactions were included in the level of realizations achieved in the Base Year. Thus, AEPSC's proposed Base Year allocation of TMRs included both open and closed transactions.

The Commissioners disagreed with AEPSC's allocation under the SIA, determining that AEPSC improperly included TMRs resulting from open transactions in the Base Year allocation. The Commissioners required AEP Texas to recalculate the TMR allocation to exclude all open transactions, resulting in a higher share of TMRs for the AEPC west zone and a correspondingly higher amount of revenue to be shared with AEP Texas's customers.

AEP Texas filed a motion for rehearing on the ground that the Commissioners' decision violated the Federal Power Act[2] and the Supremacy Clause of the United States Constitution,[3] specifically arguing that the Commissioners were federally preempted from reviewing AEPSC's allocation of TMRs and that they were required to accept that allocation methodology until and unless FERC ruled otherwise. The motion was overruled by operation of law, and the Commissioners' order became final and appealable on December 5, 2004. *See* TEX. GOV'T CODE ANN. § 2001.146(c) (West 2000 & Supp.2005).

On December 21, 2004, AEP Texas filed suit in this Court challenging the Commissioners' final order in PUC Docket 26000[4] to the extent that the Commissioners required AEP Texas to reallocate the TMRs.

On December 22, 2004, AEP Texas also filed a petition for judicial review in state district court in Travis County, Texas, challenging other aspects of the Commissioners' decision but reserving the contentions raised in this appeal. *See TNC v. Public Util. Comm'n*, Docket No. GN4–04175, 98th Dist. Ct., Travis County, Texas (filed Dec. 22, 2004).

## II. Analysis

### *Summary–Judgment Standard*

■ Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper where there is no genuine dispute of a material fact that a party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202; *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir.1988). "If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir.2000) (internal quotations and citations omitted). When both parties move for summary judgment, the court reviews each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party. *Ford Motor Co. v. Texas Dept. of Transp.*, 264 F.3d 493, 498 (5th Cir.2001) (citing *Taylor v. Gregg*, 36 F.3d 453, 455 (5th Cir.1994)). Doubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party. *See Burch v. City of Nacogdoches*, 174 F.3d 615, 619 (5th Cir.1999). Howev-

---

**2.** 16 U.S.C. §§ 791a–828c (2000 & Supp. 2005).

**3.** U.S. CONST. art. VI, § 2.

**4.** *Application of West Texas Utilities for Authority to Reconcile Fuel Costs*, PUC Docket No. 26000, Order on Rehearing (Oct. 18, 2004).

er, "[n]either 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the non-movant's burden," *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996), and only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment, *see Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505.

Summary judgment is designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265. A claim for declaratory judgment is appropriate for summary judgment when it presents questions of law for the court. *Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 339 (5th Cir. 2004). Matters regarding federal preemption are questions of law for the court. *E.g., Texas Manufactured Housing Ass'n. Inc. v. City of La Porte*, 974 F.Supp. 602, 604, 607 (S.D.Tex.1996). Accordingly, whether the Commissioners' actions are constitutionally valid is a question of law that this Court may decide on summary judgment.

### Federal Preemption under Federal Power Act and Supremacy Clause

AEP Texas asserts that the Commissioners' assumption of jurisdiction is foreclosed by *Entergy Louisiana, Inc. v. Louisiana Pub. Serv. Comm'n*, 539 U.S. 39, 123 S.Ct. 2050, 156 L.Ed.2d 34 (2003). AEP Texas argues that *Entergy Louisiana* held that state regulatory authorities may not second guess the allocation of costs and revenues among operating companies in a multistate power system even where, as here, the federal tariff has "dele-

gate[d] discretion to the regulated entity to determine the precise . . . allocation." *Id.* at 42, 123 S.Ct. 2050. Because Congress has given FERC exclusive jurisdiction to interpret and enforce the terms of the federal tariff, AEP Texas argues, FERC alone may determine the reasonableness of the regulated utility's allocation of costs or revenues under a FERC tariff, and the Commissioners must accept the costs and revenues set under such tariffs and pass them through to retail customers unless and until FERC determines otherwise.

In their response and cross-motion for summary judgment, the Commissioners assert that their decision to reject AEPSC's allocation of TMRs was entirely proper because they properly read and applied the terms of the SIA and, following the plain language of the SIA, their decision violates neither the Federal Power Act nor the Supremacy Clause.[5]

The dispute in this cause centers on the Commissioners' decision to exclude the value of the open transaction from AEPSC's allocation of TMRs under the SIA. Section 1.39 of the SIA defines TMRs as the difference between "revenues collected" and out-of-pocket costs plus transmission expenses and section 1.9 of the SIA defines "Base Year" allocation as the relative percentage of total margins "received" by the AEP operating companies, on the one hand, and the CSW operating companies, on the other. The Commissioners argue that because AEPC neither collected revenue, nor received a realization during the Base Year from open transactions, the plain language of section 1.9 and 1.39 of the SIA required AEPSC

---

**5.** The Intervenors' response to AEP Texas's motion for summary judgment argues that federal preemption and the filed-rate doctrines do not apply to the Commissioners' actions in this cause because the Commission-

ers are only applying the federal tariff under the terms of the SIA. This argument is subsumed in that of the Commissioners, and therefore this Court will address both arguments together.

to exclude such transactions from the Base Year allocation.

The parties agree that FERC has exclusive jurisdiction to regulate interstate wholesale-power rates and that the "filed rate doctrine" requires the Commissioners to follow the terms of the SIA when setting AEP Texas's retail rates. *Nantahala Power & Light Co. v. Thornburg,* 476 U.S. 953, 965–66, 106 S.Ct. 2349, 90 L.Ed.2d 943 (1986). The Commissioners argue, however that the SIA provides no discretion for AEPSC to alter the definition of TMRs under section 1.39 of the SIA. AEP Texas argues that the SIA says nothing about AEPSC's use of a particular accounting methodology, and therefore the Commissioners may not review AEPSC's allocation of TMRs.

The Federal Power Act grants FERC exclusive jurisdiction to regulate the transmission and sale of electric energy at wholesale in interstate commerce. 16 U.S.C. § 824. The act provides that all rates and charges, and all rules and regulations affecting such charges, must be "just and reasonable," *id.* at § 824d(a), and nondiscriminatory, *id.* at § 824d(b). To enable FERC to enforce this prohibition, section 205(c) of the Federal Power Act requires public utilities to file with FERC "schedules" or "tariffs" that show that their rates and charges for wholesale sales of electricity and the classifications, practices, and regulations affecting such charges, together with all contract which in any manner affect or relate to such charges. *Id.* at § 824d(c). The SIA is a federally approved tariff on file with FERC as a rate schedule. Schedule D3 of the SIA provides the methodology for AEPSC's allocation of TMRs.

■ The United States Supreme Court has consistently construed the Federal Power Act to grant FERC jurisdiction to make all determinations required to regulate wholesale rates and to allocate costs among affiliated utilities, regardless of the impact on state regulation. *See FPC v. Southern Cal. Edison Co.,* 376 U.S. 205, 215–16, 84 S.Ct. 644, 11 L.Ed.2d 638 (1964); *Montana–Dakota Utils. Co. v. Northwestern Pub. Serv. Co.,* 341 U.S. 246, 251–52, 71 S.Ct. 692, 95 L.Ed. 912 (1951). Any state action is therefore preempted if its effect is to interfere with FERC's interstate allocation of costs among the companies of an integrated power system. *See Maryland v. Louisiana,* 451 U.S. 725, 749–50, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981).

■ The Supreme Court developed the "filed-rate doctrine" to "enforce the exclusive jurisdiction vested by Congress in FERC" and thereby give effect to the Supremacy Clause. *Nantahala Power & Light Co.,* 476 U.S. at 966, 969, 106 S.Ct. 2349. Under this doctrine, interstate power rates that are filed with FERC or fixed by FERC must be treated as lawful in a state or federal proceeding unless and until they are changed by FERC, *id.* at 970, 106 S.Ct. 2349, and no tribunal may enter an order that would have the effect of "authoriz[ing] commerce in the commodity on other terms." *Montana–Dakota Utils. Co.,* 341 U.S. at 251, 71 S.Ct. 692.

In *Entergy Louisiana,* the Supreme Court held that state law was preempted under the filed-rate doctrine notwithstanding the nonspecific nature of the FERC tariff in question, which "delegate[d] discretion to the regulated entity to determine the precise cost allocation" between affiliated companies that was being challenged. 539 U.S. at 42, 123 S.Ct. 2050. The Court then rejected the argument that the filed-rate doctrine is limited to tariffs providing specific mandates, holding that "[i]t matters not whether FERC has spoken to the precise classification ..., but only whether the FERC tariff dictates how and by whom that classification should be made." *Id.* at 49–50, 123 S.Ct. 2050.

The overriding principle from *Entergy Louisiana* is that FERC has exclusive jurisdiction over transactions among affiliated utilities operating an interstate power pool and over all the complex interrelated questions that these arrangements present. "[W]hether one characterizes the questions as related to prudence, interpretation [of the basic service agreements], or cost allocation, they are clearly matters most appropriately resolved by [FERC] as part of its overriding authority to evaluate and implement all applicable wholesale rate schedules." *Mississippi Power & Light Co. v. Mississippi ex rel. Moore,* 487 U.S. 354, 378, 108 S.Ct. 2428, 101 L.Ed.2d 322 (1988)(Scalia, J., concurring in the judgment)(quoting *AEP Generating Co.,* 36 FERC ¶ 61,226, at 61,550 (1986)).

■ Applying these principles, the Court finds that the Commissioners improperly assumed jurisdiction to review and reject AEPSC's allocation of TMRs. Schedule D of the SIA is a tariff fixed by and filed with FERC that sets forth how and by whom the allocation of the revenues from selling power among members of an integrated interstate power pool are decided. FERC found that the SIA was "just and reasonable" under Section 205 of the Federal Power Act and approved it. *American Elec. Power Co. & Cent. & SW. Corp.,* 2000 WL 280781, 90 FERC ¶ 61,242, at 61,797 (2000). Thus, the omission of AEPSC's use of a particular accounting methodology must be interpreted to grant deference to AEPSC to choose the ac-

counting methodology it will use to allocate the TMRs. It clearly may not be interpreted to grant the Commissioners the authority to assign their preferred accounting methodology on AEPSC.[6] Therefore, the Commissioners must accept AEPSC's allocation of TMRs under Schedule D3 unless and until FERC says otherwise.[7]

Congress has provided states with the ability to seek a remedy at FERC for any action inconsistent with the federal tariff. Under section 825e of Title 16 of the United States Code, a state may file a complaint with FERC about inter-utility activities and these complaints may ultimately result in FERC action declaring rates, practices, and contracts unjust and unreasonable and establishing new ones. 16 U.S.C. §§ 824e(a), 824d(e), 825e. Thus the Commissioners, dissatisfied with AEPSC's allocation of TMRs under the SIA, may seek a determination from FERC that the SIA has been violated.[8]

### III. Conclusion

This Court therefore concludes that the Commissioners' actions, in violation of the Federal Power Act and the Supremacy Clause, usurped a function that Congress has assigned to FERC. *See Nantahala Power & Light Co.,* 476 U.S. at 964, 106 S.Ct. 2349. The sole remedy for any alleged violation of the SIA is at FERC. The Commissioners therefore were preempted from deciding that issue. In accordance with the foregoing:

---

**6.** The Court also notes that although the PUC has jurisdiction over AEP Texas because AEP Texas provides retail electric services in Texas, the PUC has no jurisdiction over AEPSC that makes the calculations under SIA, which would logically be a precondition to adjudicating claims that its calculations violated that federal tariff.

**7.** Schedule D3 of the SIA also provides that any new methodology for allocating TMRs, beyond the period of time specified under the

terms of the SIA, must be filed with FERC for approval, expressly granting jurisdiction to review AEPSC's allocation methodology with FERC.

**8.** Having determined that the Commissioners are preempted from reviewing AEPSC's allocation of TMRs under the terms of the SIA, this Court need not address AEP Texas's Commerce Clause argument. U.S. Const. art. I, § 8, cl. 3.

IT IS ORDERED that Plaintiff AEP Texas North Company's Motion for Summary Judgment filed February 23, 2005 (Doc. # 11) is **GRANTED**.

IT IS FURTHER ORDERED that the Commissioners' Cross–Motion for Summary Judgment filed April 1, 2005 (Doc. # 27) is **DENIED**.

IT IS FINALLY ORDERED and **DE-CLARED** that Defendants Commissioners Paul Hudson, Julie Parsley, and Barry Smitherman are preempted by federal law under the Federal Power Act and the Supremacy Clause of the U.S. Constitution, and Defendants are **ENJOINED** from enforcing their ruling regarding the allocation of trading and marketing realizations in the following matter: *Application of West Texas Utilities for Authority to Reconcile Fuel Costs,* PUC Docket No. 26000.