AEP TEXAS CENTRAL COMPANY,
Plaintiff,

v.

Paul HUDSON, Chairman of the Public Utility Commission of Texas, Julie Parsley, Commissioner of the Public Utility Commission of Texas, and Barry Smitherman, Commissioner of the Public Utility Commission of Texas, Defendants.

No. A–05–CA–619 LY.

United States District Court,
W.D. Texas,
Austin Division.

Aug. 2, 2006.

David Chapman Duggins—argued for II, Clark, Thomas, & Winters, Austin, for AEP Texas Central Company, Plaintiff.

Douglas B. Fraser, Suzanne Antley—argued for Defendant, Attorney General's Office, Energy Division/Transportation, Austin, for Barry Smitherman, Julie Parsley, Paul Hudson, Defendants.

Steven A. Porter—argued for intervenors, Lloyd Gosselink Blevins Rochelle &

Townsend, P.C., Austin, for CPL Cities Steering Committee, Movant.

R. Lambeth Townsend, Lloyd Gosselink Blevins Rochelle & Townsend, PC, Austin, for CPL Cities Steering Committee, Movant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

YEAKEL, District Judge.

BE IT REMEMBERED that on June 20, 2006, this Court called the above-styled case for trial. Plaintiff AEP Texas Central Company ("AEP Central") appeared by counsel; Defendants the individual Commissioners (hereinafter referred to collectively as the "Commissioners") appeared by counsel; and Intervenors the Cities of Alice, Alton, Aransas Pass, Big Wells, Camp Wood, Carrizo Springs, Corpus Christi, Dilley, Eagle Pass, Edinburg, Edna, Freer, Ganado, George West, Goliad, Harlingen, Indian Lake, La Feria, Laguna Vista, Laredo, Los Fresnos, Luling, Lyford, Mathis, McAllen, Mercedes, Odem, Orange Grove, Palm Valley, Pearsall, Port Aransas, Port Isabel, Port Lavaca, Ranch Viejo, Refugio, Rockport, Roma, San Benito, Santa Rosa, Sinton, Taft, and Victoria, Texas (the "Cities") appeared by counsel. Also before the Court are Plaintiff's Motion for Judgment in an Agreed Case filed March 24, 2006 (Doc. # 11); the Cities' Response to Plaintiff's Motion for Summary Judgment filed April 25, 2006 (Doc. # 12); PUCT Commissioners' Response to Plaintiff's Memorandum in Support of Judgment filed April 25, 2006 (Doc. # 14); and Plaintiff's Reply in Support of Judgment filed May 15, 2006 (Doc. # 15). At the June 20, 2006 hearing, the Court **DISMISSED** Plaintiff's Motion for Judgment in an Agreed Case filed March 24, 2006 (Doc. # 11), construing the motion, responses, and reply as briefs filed as part of the record for the June 20, 2006 bench trial.

In this action, AEP Central requests this Court to declare the Commissioners preempted by federal law and to enjoin the Commissioners from enforcing their ruling regarding the allocation of trading and marketing realizations of AEP Central. Having carefully considered the evidence in the PUC record and the case law applicable to this action, this Court finds in favor the AEP Central for the reasons that follow.

### Jurisdiction and Venue

This cause arises under the United States Constitution and the laws of the United States, including the Supremacy Clause of the United States Constitution, U.S. CONST. art. VI, § 2, cl. 2; the Commerce Clause of the United States Constitution, U.S. CONST. art. I, § 8, cl. 3; and the Federal Power Act, 16 U.S.C. §§ 791a–828c (2000 & Supp.2006). Jurisdiction is conferred to the federal district court by 28 U.S.C. §§ 1331, 1337, and 1343 (1993 & Supp.2006). Venue is proper because at least one Defendant resides in the Austin Division of the United States District Court for the Western District of Texas. See 28 U.S.C. § 1391(b) (Supp. 2006).

### Background and Facts

AEP Central is one of nine wholly owned subsidiaries of American Electric Power Company ("AEPC"), a multistate electric-utility holding company. AEP Central is a party to a System Integration Agreement ("SIA"), an agreement among the nine AEPC operating companies, that provides the contractual basis for the distribution of certain power-supply costs and benefits between AEP's east zone (the historic AEP system) and AEP's west zone (the former Central and South West Corporation System). For many years, AEP Central was a subsidiary of the Central

and South West Corporation ("CSW"). With the merger of AEP and CSW into AEPC, AEP Central became a subsidiary in AEP's west zone.

As a subsidiary of AEPC, AEP Central is required to share revenues with its retail customers under the SIA. The SIA designates an agent-the American Electric Power Service Corporation ("AEPSC")-to allocate "Trading and Marketing Realizations" ("TMRs") that the AEPC system earns from a category of wholesale-electricity market transactions. The SIA is a wholesale rate schedule on file with the Federal Energy Regulatory Commission ("FERC").

AEP Central is also a party to the Restated and Amended Operating Agreement ("CSW Agreement"), a wholesale rate schedule on file with FERC. The CSW Agreement was entered into by and among the former CSW-system companies, including AEP Central, on January 1, 1997, prior to the merger of AEP and CSW. The CSW Agreement, which remains in effect today, governs the distribution of certain costs and benefits within the AEP west zone. Unlike the SIA, the CSW Agreement does not apply to inter-zone allocations between the AEP west and east zones, but rather applies only to intra-zone allocations solely within the AEP west zone.

On December 2, 2002, AEP Central [1] applied to the PUC to reconcile its fuel expenses and revenues for the period of July 1998 through December 2001. In the fuel-reconciliation proceeding before the PUC, AEP Central presented evidence that it had been allocated a trading and market profit of $25,367,077 by the agent, AEPSC, pursuant to Schedule D3 of the SIA. AEP Texas argued that the Commissioners were preempted under federal law

from reviewing AEPSC's allocation decision and that they were required to accept AEPSC's allocation decision until and unless FERC determined otherwise.

The Commissioners disagreed with AEPSC's allocation under the SIA, determining that AEPSC improperly included TMRs resulting from open transactions in the Base Year allocation. The Commissioners further determined that AEPSC improperly allocated margins among the AEP west-zone companies under Schedule F of the CSW Agreement. The Commissioners interpreted Schedule F to include transactions and sales generated by both the AEP east-zone and west-zone companies, rather than only the transactions and sales generated by the AEP west-zone companies. As a result, the Commissioners calculated a higher realization to be allocated to AEP Central and offset AEP Central's recovery of fuel costs by the amount of that higher realization.

AEP Texas filed a motion for rehearing challenging the Commissioners' rulings on federal preemption and Commerce Clause grounds. The Commissioners reaffirmed their original order on June 3, 2005. Although Texas Central filed a second rehearing petition, none of the Commissioners voted to add the petition to an open-meeting agenda. Thus, the second petition for rehearing was overruled by operation of law. The Commissioners then reallocated margins according to its reading of the SIA and CSW Agreement, allocating AEP Texas approximately $15 million more than it had received from AEPSC for the original adjustment period, limiting AEP Central's recovery from retail customers through the fuel-reconciliation proceeding.

---

1. At the time the application was filed, AEP Central operated under its former name, Cen-
tral Power and Light Company.

On August 5, 2005, AEP Central filed suit in this Court challenging the PUC's final order in PUC Docket 27035[2] on the grounds that the Commissioners violated the Supremacy Clause, the Federal Power Act, and the Commerce Clause, and seeking an injunction prohibiting the PUC from enforcing its orders to the extent that the Commissioners refuse to accept AEPSC's allocation of TMRs under both the SIA under the CSW Agreement.

### Findings and Conclusions

AEP Central asserts that because Congress has given FERC exclusive jurisdiction to interpret and enforce the terms of the federal tariff, FERC alone may determine the reasonableness of the regulated utility's allocation of costs or revenues under a FERC tariff, and the Commissioners must accept the costs and revenues set under such tariffs and pass them through to retail customers unless and until FERC determines otherwise. AEP Central notes that this very issue, as applied to the SIA, has already been decided by this Court in *AEP Texas North Co. v. Hudson*, 389 F.Supp.2d 759 (W.D.Tex.2005). AEP Central asserts that the reasoning and holding in this Court's *AEP Texas North* opinion applies equally to the CSW Agreement. AEP Central argues that because both the SIA and the CSW Agreement are FERC tariffs that delegate authority to the agent, AEPSC, to make allocation decisions, the Commissioners are federally preempted from interpreting the allocation of TMRs differently under either the SIA or the CSW Agreement.

In response, the Commissioners argue that this Court's opinion in *AEP Texas North* erroneously assumes that the SIA directly delegates discretion to AEPSC to determine the precise allocation of TMRs. Further, the Commissioners assert that this Court's reliance in *AEP Texas North* on the U.S. Supreme Court's decision in *Entergy Louisiana* is misplaced because the Supreme Court did not reach the issue of the exclusivity of FERC jurisdiction. *See AEP Texas North Co.*, 389 F.Supp.2d at 764–65 (citing *Entergy Louisiana, Inc. v. Louisiana Pub. Serv. Comm'n*, 539 U.S. 39, 123 S.Ct. 2050, 156 L.Ed.2d 34 (2003)). With regard to the CSW Agreement, the Commissioners contend that their interpretation of the allocation of TMRs comported with the plain language of the CSW Agreement. The Cities argue that the CSW Agreement does not apply to the allocation of TMRs between AEP's east and west zones; thus, no FERC-approved tariff applies, leaving the Commissioners the authority to interpret the allocation of TMRs between AEP's east and west zones.

### Allocation of TMRs under the SIA

As this Court reasoned in *AEP Texas North*, "the overriding principle from *Entergy Louisiana* is that FERC has exclusive jurisdiction over transactions among affiliated utilities operating an interstate power pool and over all the complex interrelated questions that these arrangements present." 389 F.Supp.2d at 765. "[W]hether one characterizes the questions as related to prudence, interpretation [of the basic service agreements], or cost allocation, they are clearly matters most appropriately resolved by [FERC] as part of its overriding authority to evaluate and implement all applicable wholesale rate schedules." *Mississippi Power & Light Co. v. Mississippi ex rel. Moore*, 487 U.S. 354, 378, 108 S.Ct. 2428, 101 L.Ed.2d 322 (1988) (Scalia, J., concurring in the judgment) (quoting *AEP Generating Co.*, 36 FERC ¶ 61,226, at 61,550 (1986)). Applying these principles, this Court found that the Commissioners improperly assumed jurisdiction to review and reject AEPSC's allocation of TMRs under Schedule D of the SIA. *AEP Texas North*, 389 F.Supp.2d at 765. Because the TMR-allocation decision in the first issue in this

---

**2.** *Application of Central Power and Light Company for Authority to Reconcile Fuel Costs,* PUC Docket No. 27035, Order on Rehearing (June 3, 2005).

cause is also governed by the SIA, our holding in *AEP Texas North* applies with the same force and effect. Therefore, the Court finds that the Commissioners in this cause also improperly assumed jurisdiction to review and reject AEPSC's allocation of TMRs under the SIA in violation of the Federal Power Act and the Supremacy Clause.

*Allocation of TMRs under the CSW Agreement*

■ Like the SIA, Schedule F of the CSW Agreement is a tariff fixed and filed with FERC that provides the contractual basis for the allocation of trading margins from off-system sales and purchases among the participating companies. *See* Restated and Amended Operating Agreement Among Central Power and Light Company, Public Service Company of Oklahoma, Southwestern Electric Power Company, West Texas Utilities Company, Central and South West Services, Inc., Schedule F, effective January 1, 1997. Under the terms of the CSW Agreement, the term "System" is defined as the "coordinated Generating Unites of the Companies." *Id.* at art. II, § 2.36. The CSW Agreement also defines "Company" as "any one of the Central and South West Corporation operating companies," and "Companies" is defined as "Central and South West Corporation operating companies collectively." *Id.*, at art. II, § 2.8. Thus, by its terms, Schedule F applies solely to the margins on purchases and sales of the CSW operating companies. Because the CSW operating companies include AEP west-zone companies only, the allocations under Schedule F of the CSW Agreement may not include the sales gen-

erated and purchases received by the AEP east-zone companies.

FERC found that the CSW Agreement was "just and reasonable" under Section 205 of the Federal Power Act and approved it. *American Elec. Power Co. & Cent. & SW. Corp.*, 90 FERC ¶ 61,242, at 61,797 (2000). Thus, the omission of the AEP east-zone companies from sharing of TMRs on off-system purchases as sales under the terms of the CSW Agreement clearly may not be interpreted to grant the Commissioners the authority to include contributions from the AEP east-zone companies as their preferred allocation method. Therefore, the Commissioners must accept the plain language of the allocation of TMRs under Schedule F of the CSW Agreement unless and until FERC says otherwise.

Congress has provided states with the ability to seek a remedy at FERC for any action inconsistent with the federal tariff. Under section 825e of Title 16 of the United States Code, a state may file a complaint with FERC about inter-utility activities and these complaints may ultimately result in FERC action declaring rates, practices, and contracts unjust and unreasonable and establishing new ones. 16 U.S.C. §§ 824e(a), 824d(e), 825e. Thus the Commissioners, dissatisfied with the allocation of TMRs under the SIA or the CSW Agreement, may seek a determination from FERC that the SIA and the CSW Agreement have been violated.[3]

*Conclusion*

This Court therefore concludes that the PUC Commissioners' actions, in violation of the Federal Power Act and the Supremacy Clause, usurped a function that Con-

---

3. Having determined that the PUC Commissioners' actions were in violation of the Federal Power Act and the Supremacy Clause of the United States Constitution, the Court need not address AEP Central's argument that the Commissioners' actions were in violation of the Commerce Clause of the United States Constitution or that the Commissioners' interpretation of the allocation of TMRs resulted in cost trapping.

gress has assigned to FERC. *See Nant-ahala Power & Light Co.*, 476 U.S. at 964, 106 S.Ct. 2349. The sole remedy for any alleged violation of the SIA and the CSW Agreement is at FERC. The Commissioners therefore were preempted from deciding that issue. Accordingly,

**IT IS ORDERED** and **DECLARED** that the June 3, 2005 Order of the Public Utility Commission of Texas, Docket No. 27035 is **REVERSED**. Defendants Commissioners Paul Hudson, Julie Parsley, and Barry Smitherman are preempted by federal law under the Federal Power Act and the Supremacy Clause of the U.S. Constitution, and Defendants are **ENJOINED** from enforcing their ruling regarding the allocation of trading and marketing realizations in the following matter: *Application of Central Power and Light Company for Authority to Reconcile Fuel Costs*, PUC Docket No. 27035.

### FINAL JUDGMENT

Before the Court is the above-entitled cause. By Findings of Fact and Conclusions of Law signed this day, the Court has **REVERSED** the Order of the Public Utility Commission of Texas, declaring that Defendants' ruling was preempted by federal law. Accordingly, the Court enters the following Final Judgment pursuant to Federal Rule of Civil Procedure 58.

**IT IS HEREBY ORDERED AND DECLARED** that the June 3, 2005 Order of the Public Utility Commission of Texas, Docket No. 27035 is **REVERSED**. Defendants Commissioners Paul Hudson, Julie Parsley, and Barry Smitherman are preempted by federal law under the Federal Power Act and the Supremacy Clause of the U.S. Constitution, and Defendants are **ENJOINED** from enforcing their ruling regarding the allocation of trading and marketing realizations in the following matter: *Application of Central Power and*

*Light Company for Authority to Reconcile Fuel Costs*, PUC Docket No. 27035.

**IT IS FURTHER ORDERED** that all relief not expressly granted is hereby **DENIED**.

**IT IS FINALLY ORDERED** that the case hereby **CLOSED**.